CHICAGO & NORTH-WESTERN RAILWAY COMPANY vs. GOSS.

In an action against a railroad company for the negligent killing of animals belonging to the plaintiff, the court instructed the jury that "proximate negligence is negligence at the time of the happening of the injury complained of;" that "remote negligence is that which does not occur at the time of such injury;" that he thought "the plaintiff, in suffering his animals to run at large in the vicinity of the railroad, was only guilty of remote negligence;" that if so, and if the defendant was guilty of gross negligence, the latter was liable for the damage. *Held,* that the instruction was erroneous, and that the plaintiff's right to recover depended upon the *degree* of negligence on his part contributing to the injury, as well as upon the *time* of its happening.

A distinction should be made between the case of an owner whose cattle escape from his enclosure and stray upon a railroad against his will, and that of one who voluntarily permits them to go there, or to range in places where it is probable that they will do so.

ERROR to the Circuit Court for *Fond du Lac* County.

*Goss* brought his action in the circuit court against the *Chicago & Northwestern Railway Company*, for damages for the killing of two colts by an engine and cars running over them at a point in the city of Fond du Lac where the company's road crosses Western Avenue, a public street. The complaint alleges that the company, by its agents and servants, running at an unlawful rate of speed and with great violence, negligently and maliciously ran the train against and over the colts, and killed them. The answer denied all negligence and malice, and all and every wrong charged in the complaint. By a further answer the company alleged that *Goss* negligently and unlawfully allowed the colts, at the time they were killed, to go at large upon the public highways, open land and railway tracks, and that his loss was caused thereby.

On the trial, the plaintiff proved the value of the colts, and introduced evidence tending to show that Western Avenue, at the place where the defendant's road crosses it, is one of the principal thoroughfares of the city; that it is there about three-fourths of a mile from the point where the railroad crosses the southern limit of the city; that on the occasion referred to in the complaint, the train entered the corporate limits from

the south, at a speed of fifty or sixty miles an hour; that on reaching Western Avenue it was running at a speed variously estimated by the witnesses at from 25 to 60 miles an hour. The plaintiff's witnesses were of opinion that the brakes were not put on until within a few rods of said Avenue. The evidence of the defendant tended to show that the train entered the city limits at a speed of about fifty miles an hour; that one set of brakes were put on about that time, and the steam had been shut off before; that the grade was descending about 20 feet to the mile, the track wet and slippery, and the fog dense; that when the engineer first saw the colts upon the track, they were distant only from eight to twelve rods, and the train was running at a speed of 18 or 20 miles an hour; that it was then impossible to stop the train without striking the animals; that it was safer to strike them with all the force possible, and accordingly the brakes were let up and full steam put on; that if the train had been going only six miles an hour, by applying the brakes and sand it could have been stopped in about ten rods, but "there was no sand-box on the engine;" that the colts mentioned in the complaint were part of a drove which were in the habit of running upon the public roads and streets near the defendant's track, and were running loose at the time of the killing; and that there was an ordinance of the city of Fond du Lac making it a penal offense to permit such animals to run at large within the city limits.

The court instructed the jury as follows: "The colts being there upon the railroad track at the time and in the manner they were when the train was passing, was what is called in the 9th Wisconsin remote negligence, and not proximate negligence, or negligence which existed at the time the accident happened; and I think the plaintiff, in suffering his colts to run at large in the vicinity of the railroad, was only guilty of remote negligence. If the plaintiff was not guilty of proximate negligence, and the defendant was guilty of gross negli-

gence in the management of the train at the time the colts were killed, the defendant is liable for the damage."

"The law of Wisconsin requires the owners of cattle and horses to keep them upon their own premises, and it is a breach of duty to the public to turn them loose to wander upon the public streets, imperiling the lives of those who have occasion to use or cross such streets for rightful purposes."

"Although the defendant's train was running at a rate of speed greater than six miles an hour, at the time of the accident, yet such fact is no proof of negligence in the conduct of such train, so far as the killing of said colts was concerned; and the jury must be satisfied that the killing was in consequence of said high rate of speed, before it can of itself be deemed evidence of negligence."

"A regard for the safety of the lives and limbs of the passengers was the first duty of the engineer in charge of the train; and if the jury believe from the evidence, that at the time he discovered the colts upon the track, it was impossible to stop the train before striking them and that any material check in the speed of the train would increase the danger of its being thrown from the track, and that an increase in its velocity would add to its safety, then it was not only the right but the duty of the engineer to increase the speed of the train so far as he was able."

The court refused the following instructions, requested by the defendant: "If any negligence on the part of the plaintiff contributed to the happening of the injury, he cannot recover although the defendant was guilty of negligence. It was gross negligence on the part of the plaintiff to allow his colts to go at large upon the streets and uninclosed lands crossed by, and in the vicinity of, the defendant's railroad; and if, in consequence thereof, said colts went upon the track and were killed by the train, the plaintiff cannot recover, although the train was running at a rate of speed greater than was allowed by statute at that place."

Verdict and judgment for the plaintiff; and the company sued out a writ of error.

*Chas. A. Eldridge*, for plaintiff in error :

It is for the jury to determine, under proper instructions from the court, whether there has been negligence, and its nature and degree. *Stucke v. Mil. & Miss. R. R. Co.*, 9 Wis., 220 ; *Burr v. Housatonic R. R.*, 19 Conn., 566. The judge erred in his definition of *proximate* and *remote* negligence, making the distinction refer only to the matter of time, and not to the question whether, from its nature, it was the proximate or only the remote cause of the injury. If the plaintiff voluntarily turned his colts upon the track, it was proximate negligence, whether done on the day they were killed or days before. *Button v. Hudson River R. R. Co.*, 18 N. Y., 248; *Stevens v. The Oswego & Syracuse R. R. Co.*, id., 422 ; *Dascomb v. Buffalo & State Line R. R. Co.*, 27 Barb., 221; *Marsh v. N. Y. & Erie R. R. Co.*, 14 id., 364; *Stucke v. R. R. Co., supra.*—If the negligence of the plaintiff contributed to the happening of the injury, he ought not to recover. The jury should not be required to balance the negligence of the parties, and determine who should stand the loss. *Hunter v. Mil. & Ch. R. R. Co.*, 11 Wis., 169 ; *Dressler v. Davis*, 7 id., 531 ; 27 Barb., 221 ; *Clark v. Kirwan*, 4 E. D. Smith, 21 ; *Munger v. Towanda R. R. Co.*, 4 Coms., 358.—It was gross negligence in the plaintiff to allow his colts to run at large where they might go upon the track. Redfield on Railways, 363, sec. 8 ; *Marsh v. N. Y. & Erie R. R. Co., supra ; Tallmadge v. Saratoga R. R. Co.*, 13 Barb., 497 ; *L. & F. R. R. Co. v. Milton*, 14 B. Mon., 75.

*Gillet & Conklin*, for defendant in error, cited *Stucke v. Mil. & Miss. R. R. Co.*, 9 Wis., 202.

*By the Court*, DIXON, C. J. The learned judge, in his instructions to the jury, seems to have overlooked the different degrees of negligence, as slight, ordinary and gross, in considering what negligence on the part of the plaintiff below would

preclude a recovery. He restricted the jury altogether to the consideration of the question, whether the plaintiff's negligence was proximate or remote, in the sense of its having occurred, or of his being present, at the time of the alleged injury, leaving the degree wholly out of the case. In this we think he was in error, and not justified by the authority to which he referred. *Stucke vs. Mil. & Miss. R. R. Co.*, 9 Wis., 200. The *degree* of negligence exhibited by the plaintiff contributing to the injury, as well as the *time* of its happening, certainly has much to do with his right to recover; and we endeavored not to be misunderstood in this respect in the case cited. We were careful to distinguish between the case of the owner whose cattle escaped from his enclosure and strayed upon the road against his will, and that of him who voluntarily permitted them to go there, or allowed them to range in places where it was probable they would do so. We said that the latter might require a different rule of law—that the obligation of diligence is relative, and its presence or absence in one party is required or excused in proportion as it is present or absent in the other. Idem, 213, 214. It is very true that we likewise observed, that we knew of no case in which it had been adjudged that the owner of cattle trespassing upon a railroad could not maintain an action for their destruction, even if it were caused by the gross negligence of the company. But cattle are equally trespassers, whether they escape against the will and without the knowledge of the owner, or whether he voluntarily suffers them to go upon the lands of another, and it was with reference to the degree of care and diligence exercised by the owner, and not to the mere fact of trespass, that we were endeavoring to show that the rights and liabilities of the parties should be determined. We maintained that the fact of trespass alone was not sufficient to relieve the company from responsibility for acts of gross negligence, but that the trespass must be in some way connected with the owner of the cattle, and shown to have been committed with his knowledge

or through his neglect. The act of permitting brute animals to stroll upon the track of a railroad, on account of the danger to which it exposes the life and limbs of passengers and the persons of employees, was characterized as grossly and criminally negligent, and it would be very remarkable if the person guilty of it should be held entitled to the same protection in the law against loss or injury, as he who has exercised the utmost care and circumspection. It is not thus that the law discriminates between the different degrees of guilt or negligence. If the owner rashly or carelessly allows his oxen or horses to go upon the road, and they are killed by the gross negligence of the company or its servants, it is gross negligence against gross negligence, and there can be no apportionment of damages. In such case, it would seem that nothing short of proof of wanton or malicious injury would entitle him to compensation. And whether he is present at or absent from the place of injury at the time it occurs, would seem not materially to affect the question. In either case it comes through his own agency, and he must be regarded as the author of the misfortune. His negligence is in its nature continuing as well as gross. It exists at the time of the injury, and in that sense may be deemed the present and efficient, or proximate cause.

It cannot be doubted, that there was sufficient evidence to put the case to the jury upon these principles; and, inasmuch as the judge refused to do so, as well by the instructions given as by those denied, we reverse the judgment and remand the cause for a new trial, without going more in detail into the points argued by counsel.

Ordered accordingly.