GALPIN VS. THE CHICAGO & NORTH-WESTERN RAILWAY CO.

In actions for injuries committed by immediate force, proof of the forcible act and the resulting injury is *prima facie* evidence that the act was wilful or negligent.

But in an action for the killing of cattle by a train of cars at the crossing of a public road, in the absence of any evidence that the cattle were *lawfully* upon the road, the burden is upon the plaintiff of further proving negligence on the part of the defendant.

In such a case the plaintiff, being himself under a presumption of negligence, cannot recover by merely showing slight negligence on the part of the defendant.

But if the plaintiff's negligence was slight and remote, and that of the defendant gross, and the immediate cause of the injury, DIXON, C. J., is of the opinion that there may be a recovery.

APPEAL from the Circuit Court for *Outagamie* County.

Action for damages for the negligent killing of plaintiff's cow by a construction train on defendant's road. The cow was in a public highway, at the railroad crossing, when struck, and the complaint alleges that she was lawfully there. The defendant denied generally. The plaintiff's evidence did not show clearly how the cow came to be in the highway, but tended to show that she was running at large. The evidence bearing on the question of defendant's negligence was as follows: A witness for the plaintiff testified, "I saw the gravel train return about 11 o'clock A. M.; heard them whistle cattle off the track—a succession of whistles. *  *  The cars I saw were backing up.  *  *  The train was running about

eighteen or twenty miles an hour. They could have seen the cow for sixty rods. I know the whistle they gave meant there was something on the track. . If they wished to stop the train they would give one short whistle. I could have heard such a whistle if it had been given ; did not hear any." *Question :* "Have you had experience enough to know how long it would take to stop that train ?" Objection by defendant overruled. *Answer :* "I have. Such a train, I should judge, could be stopped in running twenty rods. I did not hear. any indications of stopping. They went out of sight. I should have been likely to hear any efforts to stop the train. I should judge they were more than twenty rods from the cow ; would not be positive." On cross-examination : "I did not see either the train or the cow when the whistle blew. Should think from six to twelve whistles were blown. The cars might have gone four rods. Should judge the train was forty rods from the crossing when they whistled. I was thirty or forty rods off. The crossing was sixty or eighty yards off. They could not have stopped without my hearing them. I never ran a railroad or engine ; do not know positively how far a train would run before it could be stopped." Another witness for plaintiff said : "I was at work in the field east of my house, and saw the gravel train. back up, and heard them whistle for cattle. This was between eleven and twelve, and when I came to my dinner at twelve, the cow lay in the road injured. * * * Cattle can be seen from a train coming from the east for about sixty rods. Such a train as that will brake up in going twenty rods. It is up grade there." On cross-examination : "I never ran on a train. Judge the train could be stopped in twenty rods, because I have seen it done. The cattle guards [on each side of said highway] are good, and the track is fenced. There were fifteen or sixteen cars on the train. They were backing up." The court having refused a motion for a nonsuit, the defendant called a witness who testified : "I know the road where this injury happened. The

cattle guards are put in in the usual form of the most approved kind, and the road was well fenced. I have been engaged on railroads for seventeen years; more as conductor than engineer. When cattle are on the track the whistle is usually sounded several times to scare them and signal the brakemen. It is the custom to use every exertion to stop the train when backing up. In one case in three in backing up, the train will be thrown off if it hits the cattle. * * I should think cattle might be seen from the curve in question sixty rods. A passenger train is not easily stopped under eighty rods. A construction train, with the usual number of brakemen, could not be stopped under eighty rods, with the speed of eighteen or twenty miles an hour." On cross-examination: "The usual speed of such a train would not admit of its being stopped under fifty or eighty rods, with two brakemen and sixteen cars. Such a train runs at the speed of eighteen miles per hour, rather more than less. If the train runs fast the liability of running off the track is lessened. I think the engineer who would not whistle and shut off steam when he saw cattle on the track standing, would be guilty of improper conduct; but I do not think the train could have been stopped under the circumstances in hand."

The court refused the following instructions asked by the defendant: "1. Cattle are not free commoners, and cannot be lawfully upon the highway except by ordinance or by-law of the city or town where they run at large; or except for the purpose of travel. 2. If the cow was unlawfully on the highway, the plaintiff cannot recover for injuries to her through the negligence of the defendant or his employees. 3. If the plaintiff's negligence contributed to the injury, he cannot recover on the ground of negligence in the defendant." The court gave the following instructions at defendant's request: "1. If the injury did not occur through the wilfulness or negligence of the defendant, his agents or employees, the defendant is not liable though the cow was lawfully on the highway.

2. The injury was not *prima facie* evidence of negligence, and the burden of proof is on the plaintiff to show negligence.' It also charged the jury as follows: "If you find from the testimony that the cow of the plaintiff was killed by the train of the defendant, operated by its agents or servants, at a railroad crossing, an action will lie for the injury, if at the time it was committed it might have been avoided by the exercise of reasonable care and prudence on the part of those engaged in operating or running the train."

Verdict for the plaintiff; motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*Em. B. Clark*, for appellant:

The plaintiff should have been nonsuited. To carry such a case to the jury, plaintiff's evidence should be such as would authorize them to find that the injury was caused *solely* by defendant's negligence. *Johnson v. R. R. Co.*, 20 N. Y., 73; 91 Eng. C. L., 148-9. The allegation that the cow was *lawfully* in the highway was material, and not proven. If there for pasturage or running at large, she was wrongfully there, and the plaintiff was guilty of negligence which contributed to the injury. 1 Allen, 187; 26 N. Y., 328; R. S., ch. 15, sec. 3; *Harrison v. Brown*, 5 Wis., 27; *McCall v. Chamberlain*, 13 id., 640; 15 Johns., 453; 19 id., 385; 16 Mass., 33. The other instructions refused should have been given. *Tonawanda R. R. Co. v. Munger*, 5 Denio, 255; *S. C.*, 4 Coms., 349; Pierce on Am. R. R. Law, 265-7, 322-6; 18 N. Y., 248; 24 id., 430; 7 Wis., 425: id., 232; 17 id., 428; 11 Barb., 112; 13 id., 493, 594; 14 id., 364; 21 id., 489; 22 id., 574; 37 id., 516; 2 E. D. Smith, 257; 18 Ind., 215; 19 Pa. St., 298. The general charge was erroneous in disregarding plaintiff's negligence. *Mil. & Ch. R. R. Co. v. Hunter*, 11 Wis., 160; *Dressler v. Davis*, 7 id., 527; *Trow v. Vt. Cent. R. R. Co.*, 24 Vt., 487; Pierce on Am. R. R. Law, 272-7; 35 Me,, 422; 20 Ill., 221, 478.

*W. S. Warner*, for respondent:

The only dispute is as to the negligence of defendants.

The evidence shows that defendants' agents were backing up a gravel train; could have seen the cow sixty rods; whistled for cattle but did not give any notice to brake up, but continued at the same rate of speed to where the cow was killed, without any attempt to stop; that such a train could stop in twenty seconds—witness had seen it done; and that it was up grade in that place. Defendant's evidence shows that if no attempt was made to stop the train the persons in charge thereof were in fault. The jury might have concluded from the testimony not only that there was negligence on the part of the defendant, but that the injury was willful and caused by gross negligence. The questions of law involved in the case are decided in *Stucke v. The Mil. & Miss. R. R. Co.*, 9 Wis., 202; see also *Pritchard v. R. R. Co.*, 7 Wis., 232. If the court can see clearly from the record that the verdict and judgment could not properly have been different, it will not reverse the judgment for instructions given or refused, whether abstractly correct or not. *Robbins v. Lincoln*, 12 Wis., 1; *Ely v. Tallman*, 14 id., 28; id., 49; 15 id., 50, 144.

*By the Court*, DIXON, C. J. It is not denied that the cow was injured by one of the trains of the company, but there is no evidence of the circumstances or manner in which she was injured, except that she was in the public highway at the place where it is crossed by the railroad, and that the collision occurred there. She may have been on the track, so that the engineer, by the exercise of ordinary care and watchfulness, might have seen her and avoided the collision; or she may have been off, and out of sight, and, as the train approached, in her fright and insensibility to danger, have gone suddenly before the train, under circumstance which no care or vigilance could have prevented proving fatal. The action is for negligently running upon and injuring her, and it is contended that negligence cannot be inferred from the mere fact of the injury, but that the plaintiff, to entitle himself to recover, must give some

special proof of negligence, or lay before the jury other facts tending to establish it. As a general proposition applicable to actions for injuries committed by immediate force, I think this is untrue. In such cases it is enough, in general, to prove the act of the defendant and the resulting injury, and if he has any excuse or justification he must show it. If in an action for driving against and killing his horse, the plaintiff prove the killing by the defendant as alleged, without any further evidence of the circumstances or manner of the killing, that would be sufficient for the recovery of damages; and if the defendant claims that the killing was wholly accidental or unavoidable, or that it was the fault of the plaintiff, the burden is upon him to discharge himself of liability. Proof of the act, and of the injury resulting from it, is *prima facie* evidence that the act was done wilfully or negligently. *Danner v. S. C. Railroad Co.*, 4 Rich., 334, and cases cited.

But here the cow was in the highway, and must be taken to have been unlawfully there, for cattle are not free commoners by the common law nor by the law of this state; and the question is, how far this circumstance rebuts or modifies the inference of negligence arising from the fact of injury. How the cow happened to be in the highway does not appear. If the plaintiff permitted her to go at large at or near the crossing, it was an act of gross negligence, which would preclude a recovery for anything but wilful injury. *Railway Co. v. Goss*, 17 Wis., 428. If she escaped from his enclosure, or got into the highway without any fault or want of proper care on his part, a different rule might prevail. If she was being driven along the highway, which, in strictness, is the only condition in which she could have been rightfully there, without an order or by-law of the town permitting her to go at large, then still greater care might be required of the railroad company and its agents. As it is, without any proof of the circumstances under which the cow came in the highway, or of an order or by-law permitting cattle to go at large, it must be as-

sumed, I think, that the plaintiff unlawfully allowed her to go there, and if he did, it is such evidence of negligence on his part as, in my judgment, counterbalances the presumption of negligence arising from the fact of the injury, and throws upon him the burden of giving some further proof of negligence on the part of the defendant. It appears, then, from the plaintiff's own evidence, that he was guilty of negligence which contributed to the injury ; and if he relies upon the negligence of the defendant as being either greater in degree, or the proximate cause of the injury, he must give direct proof of the facts.

It follows from these views that the first instruction asked by the defendant was improperly refused. The second and fifth instructions, which were also refused, I am not prepared to say were quite correct. The different degrees of negligence, and whether proximate or remote, are ignored. I am not prepared to say, in every case of cattle unlawfully upon the highway, that the company shall not be held responsible for any degree of negligence. If the negligence of the owner be slight and remote, and that of the company gross and the immediate cause of the injury, I think that the owner may recover.

It follows also, that the court erred in its general charge. The jury were instructed that if they found that the cow was killed at the crossing, the action would lie for the injury, if at the time it was committed it might have been avoided by the exercise of reasonable care and prudence. This was holding the company responsible for ordinary negligence. If, as I have assumed, the plaintiff permitted the cow to go at large without authority of law, the company would at most only be answerable for gross negligence, or want of slight care and prudence, or for a wilful injury. The jury should have been so instructed.

Judgment reversed, and a new trial awarded.