| 11 | 577 |
| 14 | 472 |
| 11 | 577 |
| 27 | 125 |

## WATSON, CONSTABLE, v. LEDERER.

1. The horse, wagon and harness of an unmarried man, engaged in the business of assaying and sampling ores, and necessarily used in the prosecution of his business, are exempt from execution, under the proviso at the end of General Statutes, section 32, page 602; that the tools, etc., of a mechanic, miner or other person, not exceeding $300 in value, shall be exempt from levy and sale.

2. A judgment against a constable for the seizure of exempt property, cannot be sustained where the constable has surrendered a portion of the property claimed; there being no evidence that the property surrendered was not of the value limited by the statute as exempt.

*Appeal from Custer County Court.*

ACTION brought before a justice of the peace by Samuel Lederer against E. C. Watson, constable, for the seizure of personal property belonging to plaintiff, and claimed as exempt. The plaintiff appealed to the county court from a judgment of nonsuit, and defendant appealed to the supreme court from a judgment of the county court in favor of plaintiff.

Mr. AMOS J. RISING, for appellant.

BECK, C. J. The appellant, as constable of Silver Cliff precinct, Custer county, on January 12, 1884, by virtue of an execution against the appellee, seized certain articles of personal property belonging to the latter, which were by him claimed to be exempt from execution under the statute. No brief is filed in behalf of the appellee, but the record shows that he informed the officer, prior to the levy of his writ, that he claimed all the property subsequently levied on by him to be exempt from execution. An assaying apparatus, being a portion of the property levied upon, was afterwards released by the officer; and the appellee then brought suit against him in a justice's court for three times the value of the remainder. The articles enumerated in the claim filed in the justice's court were a horse, harness, and a wagon commonly called a "buckboard." The complaint alleged that the plaintiff was a single man, and was engaged in the business of assaying, sampling and working ores, and that he kept and used all the property seized for the purpose of carrying on his trade and business. The justice gave judgment of nonsuit, but, upon appeal to the county court, the claim of the plaintiff was sustained, and judgment rendered against the officer for the sum of $210, being treble the value of the property last above mentioned. The errors assigned are that the judgment was not warranted or sustained by the evidence. Two points

are raised by the appellant as to the sufficiency of the evidence, namely: *First*, it does not appear therefrom that the plaintiff comes within the class of persons mentioned in the statute as entitled to claim and hold property exempt from execution; *second*, the evidence fails to show the value of that portion of the property seized and afterwards released by the officer, which leaves it wholly uncertain whether the remaining articles were exempt or not.

In the examination of the first question a construction of the exemption statute becomes necessary. That portion of it under which the exemption claim in this case is founded reads as follows: "And provided, also, further, that the tools, implements, working animals, and stock in trade, not exceeding $300 in value, of any mechanic, miner, or other person, not being the head of a family, used and kept for the purpose of carrying on his trade and business, shall be exempt from levy and sale on any execution or writ of attachment while such person is a *bona fide* resident of this state." Gen. St. p. 602. At the date of the levy this was the only provision of the statute which exempted from execution or attachment property, other than wearing apparel, of persons who were not heads of families. For the appellant it is urged that the appellee does not come within the class of persons herein specified, for the reason that he is neither a mechanic nor a miner; and for the further reason that the words "or other person" limit the benefits of the provision to persons of like business as those named, according to the maxim *noscitur a sociis*, which excludes the plaintiff from the protection of the statute, its language not being descriptive of the business in which he was engaged. Appellant's counsel contends that, in order to entitle a person to exemption under the designation "other person," he must follow a trade or business of the same class or kind as a mechanic or miner, and must earn his livelihood by his manual labor as a skilled

artisan or handicraftsman. We are of the opinion that the statutory provision in question is not capable of such a narrow construction, and therefore cannot adopt it. Being added as a proviso, a reference to the body of the exemption statute becomes necessary to its correct interpretation. The body of the act is embraced within nine subdivisions, preceded by this paragraph: "The following property, when owned by any person being the head of a family, and residing with the same, shall be exempt from levy and sale upon any execution, or writ of attachment, or distress for rent; and such articles of property shall continue exempt while the family of such person are removing from one place of residence to another within this state." Gen. St. p. 601, § 32. Of the nine subdivisions following, four only can be claimed to be contingent upon the kind of trade or business pursued by one who is the head of a family, residing with the same. These are as follows: "Sixth. The tools and implements, or stock in trade, of any mechanic, miner, or other person, used and kept for the purpose of carrying on his trade or business, not exceeding $200 in value. Seventh. The library and implements of any professional man, not exceeding $300. Eighth. Working animals to the value of $200. Ninth. One cow and calf, ten sheep, and the necessary food for all the animals herein mentioned for six months, provided or growing, or both; also one farm wagon, cart or dray, one plow, one harrow, and other farming implements, including harness and tackle for team, not exceeding $50 in value."

The language of the first five subdivisions is general, and applicable alike to all heads of families residing with the same, irrespective of the occupation or business in which they may be engaged. The remainder, saving, perhaps, the first clause of the ninth subdivision, are further dependent upon the business pursuits of such persons. The clear intention of the framers of this statute appears to have been to exempt from levy and sale,

on execution, writ of attachment, or distress for rent, those articles of personal property commonly and necessarily used by the different classes of persons designated, in carrying on the various avocations by means of which they obtain sustenance for themselves and families. It will be observed that specific provision is made for the miner as well as the mechanic and the artisan; and for the farmer and teamster as well as for the professional man. Referring now to the proviso, we perceive that it embraces the same classes of persons, and the same character of pursuits, described in the last four subdivisions of the act; the essential difference being in the amount or value of the property exempted, and in the fact that the latter provisions are for the benefit of persons who are not heads of families. That the protection provided was only designed for the skilled laborer is controverted by the letter as well as the spirit of the statute. The man whose business is to till the soil does not " earn his livelihood by his manual labor as a skilled artisan or handicraftsman," but he comes within the protection of the statute. So does the miner, although he is not necessarily either a mechanic, handicraftsman or artisan. The term " miner " is defined by Webster to be " one who mines; a digger for metals and other minerals." While men of scientific attainments, or of experience in the use of machinery, are to be found in this class, yet the word by which the class is designated imports neither learning nor skill. It appearing, then, that provision is made, in the several subdivisions comprising the body of the act, for the skilled and the unskilled, the learned and the unlearned, and these several subdivisions being grouped together in a single sentence in the proviso, the application thereto of the maxim, *noscitur a sociis*, instead of limiting its provisions to skilled labor only, extends them to the members of all lawful avocations who earn their livelihood by their own exertions, whether manual or mental, and who necessarily use, in the due prosecution

thereof, specific articles of personal property of like char-
acter with those specified in the statute.   This does not
include articles of merchandise; and no opinion is now
expressed concerning the import of the term " stock in
trade," as used in the statute.   Our construction of the
statute does not conflict with the point decided in *Bevitt
v. Crandall,* 19 Wis. 610, that a person cannot, by multi-
plying his occupations, claim exemption for each.  It was
not designed to exempt property for the same individual
both as a farmer and a mechanic, or as a miner and like-
wise as a professional man, but that every person entitled
to protection should come within one of the classes desig-
nated.   Persons of different occupations, however, may
usually and necessarily employ therein articles of prop-
erty of the same general description, as tools, implements
and working animals, and severally be entitled to claim
exemption therefor.

The business of the appellee, as described by himself
and not contradicted, was of a mining character, and
was conducted and carried on as follows:  His assaying
apparatus was located at a point called " Dora," in Custer
county.   He was accustomed to drive around to the dif-
ferent mines in the vicinity, with his horse and wagon,
for the purpose of obtaining samples of ores from the
various dumps.   He would take from fifty to one hun-
dred pounds from each, haul the several samples to Dora,
where he would assay them for the purpose of ascertain-
ing their composition, and the value of the dumps from
which they were taken.   He would then either purchase
these dumps, or contract to treat the ores for the owners
at stipulated prices.   Although the owner of no other
property than the assaying apparatus and the horse,
harness and wagon, he had an arrangement with the
owner of a concentrator at Dora, whereby, in considera-
tion of employing his own property in the mode and for
the purpose stated, and of acting as manager in the
operation of the concentrator, he shared in the net profits

realized by its operations. He testified on the trial that these several transactions comprised his regular business, and, the testimony not being controverted, it appears that the horse, harness and wagon were as essential to his business as the assaying apparatus. The whole property owned by him was therefore exempt, provided it did not exceed $300 in value.

This leads us to the consideration of the second point raised and discussed by the appellant, concerning the sufficiency of the evidence to sustain the judgment. This point is well taken and fatal to the judgment. There is nothing to show the value of the property released by the officer from the levy. Its value alone may have reached the limit allowed by the statutory provision. In the absence of such proof the plaintiff was not entitled to recover. The judgment is therefore reversed and the cause remanded.

*Reversed.*