Lockwood vs. The Belle City Street R. Co.

Lockwood, Appellant, vs. The Belle City Street Railway Company, Respondent.

*December 20, 1895 — January 7, 1896.*

*Street railways: Collision with wagon: Personal injuries: Negligence on both sides: Degrees of negligence.*

1. In an action for personal injuries caused by a collision between a street car coming from the east and a wagon which was being driven obliquely across the track towards the northwest and in the rear of which plaintiff was sitting with his back to the east, the failure of the plaintiff to look towards the east or to listen for a coming car as the wagon approached and was driven upon the track is *held* to have been negligence.

2. The evidence — showing, among other things, that the driver of the wagon saw the car before his horses reached the track, and saw that the street on the north side of the track was obstructed so that he must drive further to the west, but persisted in the attempt to cross the track in front of the car — is *held* to sustain a finding of the jury that the driver also was negligent.

3. It appeared that the motorman saw the horse and wagon on the track when his car was 100 feet away; that when he got within forty or fifty feet of the wagon he attempted to stop the car by throwing off the current and applying the brake, and then by applying the reverse current; that he failed only because the brake gave way and the reverse current, for the moment, failed to take effect; and that if said appliances had worked as usual he would have had no difficulty in stopping the car before it reached the wagon. *Held*, that he was not guilty of gross negligence or of negligence greater or more culpable than that of the plaintiff or the driver of the wagon.

4. There can be no recovery for personal injuries if both parties are guilty of negligence in the same degree.

Appeal from a judgment of the circuit court for Racine county: Frank M. Fish, Circuit Judge. *Affirmed.*

This action was commenced October 7, 1893, to recover damages for personal injuries sustained by the plaintiff July 20, 1893, by reason of a collision of the wagon in which he was riding with the defendant's electric car, caused by the

alleged wilful, negligent, and reckless manner in which the defendant ran and operated its said car at the time, and without any fault on the part of the plaintiff. The answer consists of admissions, denials, and allegations that the collision was caused by the negligence and want of ordinary care on the part of the plaintiff and the persons and fellow passengers riding with him in the wagon, and on the part of the person driving the horse attached thereto.

At the close of the trial, the jury returned a special verdict, to the effect (1) that the car in question was not in a defective condition at the time of the accident; (2) that the motorman in charge of the car did not, after having reasonable ground for apprehending danger of a collision with the vehicle in question, use reasonable care and diligence in endeavoring to avoid the accident; (3) that the plaintiff, before going upon the tracks of the defendant company at the place of the accident, did not look or listen for the purpose of determining whether a car was approaching the place where he intended to cross; (4) that if the plaintiff, before going upon the tracks of the defendant, had looked and listened, he could have discovered the approaching car in time to have enabled him to avoid all injury therefrom; (5) that the driver of the conveyance in which the plaintiff was riding at the time of the accident did see the approaching car before driving upon the north track; (6) that the driver of the vehicle in question was informed of the approaching car before driving upon the north track; (7) that the driver of the conveyance, by the exercise of ordinary care and prudence, could have stopped his horse in time to have avoided the accident; (8) that the driver was guilty of a slight want of ordinary care in driving upon the north track of the defendant under the circumstances; (9) that the horse, wagon, and occupants were in a place of safety after leaving the alley, and until the horse had reached the south rail of the north track; (10) that the car which collided with the wagon was moving

at an ordinary and usual rate of speed at the time, (12) being approximately six miles per hour while passing between Main street and the place of the accident; (11) that the horse attached to the wagon was, at and immediately prior to the accident, traveling approximately at the rate of three and one-half miles per hour; (13) that, at the time the driver of the vehicle first saw or learned of the approaching car, no part of the horse or wagon was upon the north tracks of the company; (14) that the plaintiff, under the law as given to the jury by the court, was guilty of a slight want of ordinary care, which directly contributed to the accident; (15) that, should the court determine that the plaintiff is entitled to recover, then the jury assess the damages by him sustained, by reason of the accident, at $750.

Thereupon the defendant moved the court for judgment upon the special verdict, which motion was granted, and judgment was thereupon entered in favor of the defendant, dismissing the complaint, with costs. From that judgment the plaintiff appeals.

*Wallace Ingalls*, attorney, and *John B. Simmons*, of counsel, for the appellant, contended, *inter alia*, that the negligence of the motorman, as found by the jury, was later in point of time than plaintiff's negligence, admitting the latter to have been negligent, and but for it the injury could and would have been avoided. This brings the case clearly within the rule of *Valin v. M. & N. R. Co.* 82 Wis. 16, where it was held that the negligence of deceased would not enable the railroad company to escape liability, if the act which caused the injury was done by the defendant after it discovered his negligence, and if the defendant could have avoided the injury by the exercise of reasonable care. The same rule is supported by an unvarying line of authorities. *Morris v. C., B. & Q. R. Co.* 45 Iowa, 32; *Freer v. Cameron*, 55 Am. Dec. 669; *Kerwhacker v. Cleveland R. Co.* 62 id. 246; *Vicksburg & J. R. Co. v. Patton*, 66 id. 552; *Brown v.*

Lockwood vs. The Belle City Street R. Co.

*H. & St. J. R. Co.* 11 Am. Rep. 420; *Richmond & D. R. Co. v. Anderson,* 31 id. 750; *Isbell v. N. Y. & N. H. R. Co.* 71 Am. Dec. 78; 4 Am. & Eng. Ency. of Law, 27; id. 75, note 2; id. 939, note 3; *Inland & S. C. Co. v. Tolson,* 139 U. S. 551, 558; *Austin v. N. J. Steamboat Co.* 43 N. Y. 82. In the *Valin Case* the court expressly held that the intervening negligence of defendant *need not be gross* in order to entitle plaintiff to a recovery. And the same doctrine is supported by the following cases: *Inland & S. C. Co. v. Tolson,* 139 U. S. 551, 558; *Radley v. L. & N. W. R. Co.* L. R. 1 App. Cas. 754, 759; *Scott v. D. & W. R. Co.* 11 Ir. C. L. 377; *Austin v. N. J. Steamboat Co.* 43 N. Y. 82. Indeed it may be said the question is not one of *comparative* negligence, but of whose negligence was the *proximate cause* of the injury, and if, notwithstanding plaintiff's negligence, defendant might in the exercise of ordinary care and prudence have avoided the injury to him, it is liable.

The rule announced in the *Valin Case* that the subsequent supervening negligence on the part of defendant *need not be gross* in order to authorize a recovery, and that mere failure to exercise reasonable care and prudence is sufficient, is supported by all the text writers and by the overwhelming weight of adjudicated cases. Deering, Neg. § 31; Shearm. & Redf. Neg. §§ 36, 37; Cooley, Torts, 675; 2 Redfield, Railways (3d ed.), § 177, subd. 23; Thomp. Neg. 1156, 1157; 1 Addison, Torts (Wood's ed.), 41, § 34; Moak's Underhill, Torts, 285, 287, 288; 2 Am. & Eng. Ency. of Law, 748; 4 id. 27; Pollock, Torts (1st ed.), 376; Whittaker's Smith, Neg. 374–376; Whart. Neg. § 343; Patterson, Ry. Acc. Law, 51; Beach, Contrib. Neg. (1st ed.), 58, § 18; Buswell, Personal Injuries, § 101; *Davies v. Mann,* 10 Mees. & W. 546; *Radley v. L. & N. W. R. Co.* L. R. 1 App. Cas. 754; *S. C.* 18 Moak's Eng. 37; *Dowell v. General S. Nav. Co.* 5 Ell. & B. 195; *Tuff v. Warman,* 94 Eng. C. L. 573; *Butterfield v. Forrester,* 11 East, 60; *Bridge v. G. J. R. Co.* 3

Mees. & W. 244; *Colchester v. Brooke*, 53 Eng. C. L. 339; *Dimes v. Petley*, 69 id. 282; *Marriott v. Stanley*, 1 Man. & G. 568; *Bird v. Holbrook*, 4 Bing. 628; *Lynch v. Nurdin*, 1 Adol. & El. N. S. 29; *Raisin v. Mitchell*, 9 Car. & P. 613; *Witherley v. Regent's C. Co.* 104 Eng. C. L. 2; *Scott v. D. & W. R. Co.* 11 Ir. C. L. 377; *Clayards v. Dethick*, 12 Q. B. 439; *Thompson v. N. E. R. Co.* 2 Best & S. 106; *Wyett v. G. W. R. Co.* 6 id. 709; *Kerwhacker v. C., C. & C. R. Co.* 3 Ohio St. 172; *Trow v. Vt. Cent. R. Co.* 24 Vt. 487, 495; *Richmond & D. R. Co. v. Anderson's Adm'r*, 31 Gratt. 812; *Brown v. H. & St. J. R. Co.* 50 Mo. 461; *Baltimore & O. R. Co. v. State*, 36 Md. 366; *Isabel v. H. & St. J. R. Co.* 60 Mo. 475; *Vicksburg & J. R. Co. v. Patton*, 31 Miss. 156; *Romick v. C., R. I. & P. R. Co.* 62 Iowa, 167; *Austin v. N. J. Steamboat Co.* 43 N. Y. 82; *Button v. H. R. R. Co.* 18 N. Y. 248, 258; *Donohue v. St. L., I. M. & S. R. Co.* 91 Mo. 357; *Lake Shore & M. S. R. Co. v. Bodemer*, 139 Ill. 596; *Ill. Cent. R. Co. v. Baker*, 47 Ill. 295; *Ill. Cent. R. Co. v. Middlesworth*, 46 id. 494; *Chicago, M. & St. P. R. Co. v. Phillips*, 14 Ill. App. 265; *Rockford, R. I. & St. L. R. Co. v. Irish*, 72 Ill. 404; *Shuman v. I. & St. L. R. Co.* 11 Ill. App. 472; *Chicago & N. W. R. Co. v. Carpenter*, 45 id. 294; *Ohio & M. R. Co. v. Stratton*, 78 Ill. 88; *Citizens' St. R. Co. v. Steen*, 42 Ark. 321; *Little Rock & S. F. R. Co. v. Finley*, 37 id. 562; *Meeks v. S. P. R. Co.* 56 Cal. 513; *Needham v. S. F. & S. J. R. Co.* 37 id. 409; *Colo. Cent. R. Co. v. Holmes*, 5 Colo. 197; *Denver & B. P. R. T. Co. v. Dwyer*, 20 id. 132; *Isbell v. N. Y. & N. H. R. Co.* 27 Conn. 393; *Macon & W. R. Co. v. Davis*, 18 Ga. 679; *Cent. R. & B. Co. v. Davis*, 19 id. 437; *Evansville & C. R. Co. v. Hiatt*, 17 Ind. 102; *Evans v. Adams Exp. Co.* 122 id. 362; *Indianapolis, P. & C. R. Co. v. Pitzer*, 109 id. 179; *Indianapolis & C. R. Co. v. Wright*, 22 id. 376; *Keefe v. C. & N. W. R. Co.* 60 N. W. Rep. 503; *Morris v. C., B. & Q. R. Co.* 45 Iowa, 29; *Albertson v. K. & D. M. R. Co.* 48 id. 292; *Deeds v. C., R. I.*

& P. R. Co. 69 id. 164; Romick v. C., R. I. & P. R. Co.
62 id. 167; McKean v. B., C. R. & N. R. Co. 55 id. 192;
Pacific R. Co. v. Houts, 12 Kan. 328; Cent. Pas. R. Co. v.
Rose, 22 S. W. Rep. 745; Ky. Cent. R. Co. v. Dills, 4 Bush,
593; McGuire v. Vicksburg, S. & P. R. Co. 46 La. Ann.
1543; Baltimore & O. R. Co. v. State, 33 Md. 542; Kean v.
B. & O. R. Co. 61 id. 154; Baltimore & O. R. Co. v. Mulli-
gan, 45 id. 486; Locke v. F. D., St. P. & P. R. Co. 15 Minn.
350; Scheffler v. M. & St. L. R. Co. 32 id. 518; Miss. Cent.
R. Co. v. Mason, 51 Miss. 234; Vicksburg & J. R. Co. v.
Patton, 31 Miss. 156; Morrisy v. Wiggins F. Co. 43 Mo.
384; Isabel v. H. & St. J. R. Co. 60 id. 482; Zimmerman v.
H. & St. J. R. Co. 71 id. 476; Whalen v. St. L., K. C. & N.
R. Co. 60 id. 323; Walsh v. Miss. V. Transp. Co. 52 id. 434;
Burnett v. B. & M. R. Co. 16 Neb. 332; Bunting v. C. P.
R. Co. 16 Nev. 277; Green v. Erie R. Co. 11 Hun, 333;
Button v. H. R. R. Co. 18 N. Y. 248, 258; Austin v. N. J.
Steamboat Co. 43 N. Y. 75; Barker v. Savage, 45 id. 193;
Kenyon v. N. Y. C. & H. R. R. Co. 5 Hun, 480; Huerzeler
v. C. C. T. R. Co. 20 N. Y. Supp. 676; Gunter v. Wicker, 85
N. C. 310; Clark v. W. & W. R. Co. 109 id. 430; Bostwick
v. M. & P. R. Co. 2 N. Dak. 440; Railroad Co. v. Kassen,
49 Ohio St. 230; Cincinnati & Z. R. Co. v. Smith, 22 id. 227;
Houston & T. C. R. Co. v. Carson, 66 Tex. 345; Bemis v.
C. & P. R. R. Co. 42 Vt. 375; Blaine v. C. & O. R. R. 9
W. Va. 252; Washington v. B. & O. R. Co. 17 id. 190;
Baylor v. B. & O. R. R. 9 id. 270. The term "ordinary
care," used by some of the courts and writers, and the term
"reasonable care," used by others, are synonymous. Read
v. Morse, 34 Wis. 318; Richards v. Sperry, 2 id. 216; Wheeler
v. Westport, 30 id. 392; Cent. Dict.; Burrell, Law Dict.; 19
Am. & Eng. Ency. of Law, 1078; 16 id. 399, note; Barker
v. Savage, 45 N. Y. 193.

Thomas M. Kearney, for the respondent.

Lockwood vs. The Belle City Street R. Co.

CASSODAY, C. J.  1. Main street in Racine runs in a northerly and southerly direction. State street starts at Main street and runs westerly therefrom. The defendant has double street-car tracks on Main street, southerly from the east end of State street, and also has double street-car tracks connecting with those on Main street, and curving from. Main street onto State street, and running thereon westerly far beyond the place of the accident, and upon and over which the defendant's electric street cars run east and west at short intervals. State street at the place in question is seventy-four feet in width, the sidewalks occupying twelve feet on either side, leaving fifty feet between the sidewalks; and about the middle of that space is occupied by double street-car tracks, each track being five feet wide, with a space of four feet between the two tracks. Between the curb line on either side and the railway track is a little less than seventeen feet. The cars going west run upon the north track, and the cars going east run upon the south track. There is an alley running southerly from State street, the middle of which is 120 feet west of the building front on Main street, but the alley is not continued on the north side of State street. The alley is about sixteen feet wide. From the end of the alley to the north rail of the north track is forty-three feet. About 129 feet west of the alley is a viaduct, and the grade from Main street to the viaduct ascends about four feet. On the north side of State street the viaduct is about 276 feet west of the west curb line of Main street. From a point opposite the alley in the center of the north track to the straight track on Main street, the distance is 160 feet; and by following on the curve of the track onto State street it is 170 feet.

It appears from the facts as stated by the plaintiff's counsel and his witnesses, in effect, that the vehicle was a three-spring delivery wagon; that the box was eleven feet and eleven inches long; that the thills were seven feet long;

that it was nineteen feet and three inches from the ends of the shafts to the rear end of the box; that it was drawn by a single horse; that about half past 4 o'clock in the afternoon of the day named, at a point in the alley some distance south of State street, an iron safe was placed in the wagon a little in front of the hind wheels; that the plaintiff got onto the wagon to hold the safe in place; that the plaintiff's father occupied the east end of the seat as they moved north; that the plaintiff's uncle occupied the west end of the seat; that while in these relative positions the father drove north in the alley to State street; that their object was to take the safe to the father's house on the west side of the river, and for that purpose it was necessary to go west on State street; that when they first came out of the alley the father looked east, but saw no car; that there was a horse and wagon standing in front of an office on the opposite side of the street and immediately west of the line of the alley if the same had been projected north; that from the end of the alley the horse was driven in a northwesterly direction; that when the father first saw a car coming to the corner on Main street the forefeet of the horse were then over the south rail of the south track; that when the wagon was on the north track going west the uncle told the father that there was a car coming, and to hurry up, and the father then saw it coming about 100 feet east of them; that he tried to get out of the way as much as he could, by turning as far as he could to the right, but the hind wheel on the left-hand side slipped along on the north rail of the north track; that, by reason of the length of the wagon and the obstructions north of the north track and the wheel slipping along the rail, the wagon could not be got out of the way sooner, and so the car ran into the hind end of the wagon, and threw the safe and the plaintiff out, and injured his thumb, so that amputation became necessary; that the place of the collision was about fifty feet east of the bridge or

viaduct. That would be, according to the evidence, about eighty feet west of the line of the alley projected, or something more than 100 feet from the north end of the alley. It is conceded that from the time they left the alley until the collision the plaintiff did not hear nor see the car; that during that time he had hold of the safe, with his back towards the east.

The findings of the jury, to the effect that the plaintiff and the driver were each guilty of a want of ordinary care, are certainly sustained by the evidence. The fact that the plaintiff neither saw nor heard the coming car, and that his back was all the time turned toward the east, is conclusive that he neither looked nor listened for the coming car; and that certainly constituted negligence on his part,— especially as he must have known during all the time of the danger that the faces of his father and uncle were towards the northwest, so that they could not see a car coming from the east without inconvenience. The fact that the plaintiff's father, driving the horse, saw the coming car when the horse's forefeet were on the south track, and saw that the portion of the street north of the north track, in the direction in which he was driving, was obstructed by a horse and wagon standing in front of the office mentioned, ought to have admonished him that there was danger of his obstructing the passage of the coming car, as well as endangering his own safety, if he persisted in driving in the direction of the obstruction, instead of turning and going west, south of all the tracks. Besides, it appears, not only from his testimony, but also from the testimony of his brother, who was on the seat with him, that he did not see the car at all until his brother told him to hurry up, as there was a car coming around the corner; and that when the brother saw the car coming and not slowing up he again told the driver, and he again urged the horse up; and that when the car approached nearer the uncle waved his hand twice at the motorman to stop. The driver's negligence is apparent.

2. The plaintiff called, as a witness, the motorman on the car in question at the time of the collision, and he testified to the effect that he had been such motorman on the defendant's cars about six months; that prior to that time he had been a conductor thereon; that he came slowly around the curve, about as fast as a man would naturally walk; that on leaving the curve he applied the power to gradually increase the speed in the customary way, and went to putting on his gloves; that when he got about 100 feet from the wagon he for the first time discovered the horse and wagon going northwesterly across the tracks; that when he first saw them the horse was on the north track, and the wagon on the south track and between the tracks; that, running at the speed he was, he supposed they would get out of the way; that when he got forty or fifty feet from them he saw they were not yet clear from the track, "that there was a possibility of" the wagon "not clearing the track," and so he "proposed to stop the car;" that the first thing generally done when there is danger ahead is to pull off the current; that he threw off the current; that that was the first move in all cases; that the first thing he did to stop the car was to use the brake; that when he applied the brake he tightened up on the lever; that for some reason the lever slipped from his hand, or slipped in the ratchet, or slipped somewhere, and the lever came with the weight of the chain and brakes, and struck him in the side; that the brake gave way; that he thought the ratchet gave way; that he could not tell positively why it gave way,— whether it was the fault of the dog fastened onto the dash, or whether it was a slip,— but he knew it gave way; that as soon as the brake slipped and struck him he realized that he had not time enough to again apply the brake before a collision, and so he tried to apply the reverse current; that in order to do so he had to take hold of the lever and the spring on the top of the cylinder, and shove around to the right; that he hit it three or four times, but that it would not turn by the

Lockwood vs. The Belle City Street R. Co.

point; that it seemed to strike some way, but when he had hit it three or four times, and just as the car struck the wagon, it slid along, and the current took effect and re- versed all right, and the car started back; that had the reverse current taken effect when first applied, or an instant sooner than it did, the car would not have hit the wagon at all; that the instructions were not to use the reverse current unless necessary to prevent accident, as the use of the re- verse current was likely to break or injure the car. Such evidence of the motorman is undisputed.

It is undisputed that, under ordinary circumstances, an electric car running at the rate of seven or eight miles an hour can be stopped by the application of the brake in going a distance of thirty-five or forty feet; and that running at the rate of six or seven, or even ten, miles an hour it can be stopped by the reverse current properly applied in going a distance of eight or ten feet. The jury found that while passing between Main street and the place of the accident the car was moving at the rate of about six miles per hour; and that the horse and wagon were moving more than half as fast.

Thus it appears and is undisputed that the motorman saw the horse and wagon when 100 feet distant from them; that when he got within forty or fifty feet of them he was active in doing all that he could in trying to stop the car,— in throwing off the current, in attempting to apply the brake, and in attempting to apply the reverse current; and that he failed because, and only because, the brake gave way, as indicated, and the reverse current, for the moment, failed to take effect, as indicated. There is not a particle of evidence that the giving way of the brake or the failure of the reverse current to take effect was the fault of the motorman. The jury must have concluded that the motor- man had reasonable ground for apprehending danger of a collision when his car was more than forty or fifty feet

Lockwood vs. The Belle City Street R. Co.

from the wagon; and yet the evidence is undisputed that had the brake worked as usual, or the reverse current had taken effect as usual, the motorman would have had no difficulty in stopping the car, at the speed it was going, in moving a distance of thirty or forty feet.   Thus it is manifest from the undisputed evidence that there was no failure of the motorman to keep a proper lookout, no failure to act when there was reasonable ground for apprehending danger, no wilful or intentional wrong or omission of duty.   If he was at fault at all, it must have been some unconscious misjudgment, mistake, or mismove in manipulating the brake or in applying the reverse current, not disclosed by the evidence. Such misjudgment, mismove, or mistake (assuming it to have been made) was certainly not more culpable than, if as culpable as, the negligence of the plaintiff or his father, who was driving the horse.

That there can be no recovery under such circumstances has been held by this court in cases too numerous to mention.   Perhaps the case of *Schilling v. C., M. & St. P. R. Co.* 71 Wis. 255, illustrates the question involved as well as any.   In that case the plaintiff's intestate might, had he looked, have seen the train coming when nearly half a mile distant, as the track was straight and there was no obstruction.   When the train got within about eighty rods from him he was seen by the engineer walking along a pathway outside of the track, and about three feet from it, in the same direction the train was going.   When the train got within about forty feet of him he turned onto the track and was struck by the engine and was killed.   The evidence tended to prove that the train was due about that time; that it was running at an unlawful rate of speed; that the bell was not rung, nor the whistle blown, nor any signal given; that about the time the engineer first saw the deceased he had occasion to look down where he could not see the track in front, while adjusting certain machinery, and so did not

look ahead on the track again until the engine was within about forty feet of the deceased; that during the same time the fireman was busy putting in coal, as it was necessary and his duty to do. The trial court granted a nonsuit, and this court affirmed the judgment. Mr. Justice TAYLOR dissented on the ground that, admitting that the negligence of the deceased contributed to the injury, yet there was evidence tending to prove "gross carelessness" in the engineer's not watching the deceased, after he first saw him, and stopping the train before striking him; that the failure to do so was "reckless or intentional negligence." But the decision of the court was necessarily to the effect that the conduct of the engineer in assuming that the deceased, so walking on the pathway near the track, would not, under the circumstances, when the train got within forty feet of him, step upon the track in front of the engine, was not reckless nor wanton, and much less intentional. In other words, it was in effect held that where by the conduct of both parties in the transaction they are guilty of negligence in the same degree, or are equally culpable, there can be no recovery. The principle upon which that case was decided has been sanctioned by numerous cases since, as well as before. *Williams v. C., M. & St. P. R. Co.* 64 Wis. 1; *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Hansen v. C., M. & St. P. R. Co.* 83 Wis. 631; *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659; *Wilber v. Wis. Cent. Co.* 86 Wis. 535; *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304; *Lofdahl v. M., St. P. & S. S. M. R. Co.* 88 Wis. 421; *Schlimgen v. C., M. & St. P. R. Co.* 90 Wis. 194; *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 26.

But it is vigorously urged that the case at bar comes squarely within the ruling of this court in *Valin v. M. & N. R. Co.* 82 Wis. 1. The two cases are, however, broadly distinguishable. In that case the question was whether the

verdict was properly directed in favor of the defendant. There was evidence tending to prove that it was a cold, blustering, snowy day, with the wind blowing from the deceased partially toward the approaching locomotive, snowplow, and tender; that the deceased's view of such approach was greatly, if not wholly, obstructed by piles of logs, until he came within fifteen feet of the track; that when he got within eight or nine feet of the track, and the forefeet of one of his horses were on the track, he looked in the direction of the locomotive, 164 feet distant, but had little or no opportunity to observe its speed, and was struck and killed while in the act of crossing. It was there contended, in support of the judgment, that the deceased "rashly and recklessly rushed" upon the track in front of the coming locomotive; but this court held that the question of contributory negligence was for the jury. On the other hand, the engineer admitted that he saw the team headed to cross the track, and within eight or nine feet from it, when he was 540 feet from the crossing; and yet it appears that the locomotive could have been readily stopped within the distance of 300 or 350 feet, but that no whistle was blown, no bell was rung, the speed was not slackened, and the engine was not reversed until after the fatal shock; and so it was held to be a question for the jury whether the engineer, after discovering the negligence, if any, of the deceased, might not, by the exercise of reasonable care and diligence, have avoided the accident. Thus it appeared in that case from the evidence that the engineer, with the admitted knowledge of imminent peril to the team and its driver, allowed his locomotive to pass over a distance of 540 feet without doing anything whatever to prevent the collision. If such were the facts, then his conduct was certainly reckless or wanton, which this court has frequently characterized as gross negligence. True, it was there said, in referring to adjudica-

tions in other jurisdictions, that "such supervening negligence . . . need not be gross negligence in order to authorize a recovery."

Certainly, different courts and law writers do not all agree as to the most apt language to express the different degrees of negligence. This court, unlike many others, has, ever since the first year of its organization, recognized three degrees of negligence, as slight, ordinary, and gross. Thus, in *Richards v. Sperry*, 2 Wis. 216, in an opinion by WHITON, C. J., the judgment against the defendant was reversed because the trial court refused to instruct the jury to the effect that they must find for the defendants unless they found that they were guilty of gross negligence, carelessness, or intentional wrong, but did give the instructions with the word "gross" omitted. In *Stucke v. M. & M. R. Co.* 9 Wis. 213, the plaintiff's cow was negligently allowed to go upon the defendant's track, and DIXON, C. J., stated the rule thus: "Where the facts show such a degree of rashness or wantonness on the part of the servants of the company as evinces a total want of care for the safety of the cattle, or a willingness to destroy them, though such destruction may not have been intentional, we think . . . the company responsible, unless it appears that the plaintiff was *equally* negligent." The term "gross negligence" is frequently used in the opinion. In *Chicago & N. W. R. Co. v. Goss*, 17 Wis. 428, in an opinion by the same chief justice in a similar case, the same rule was followed; but the court held that the mere fact that the cattle were trespassing at the time upon the track did not relieve the company from liability for gross negligence in killing them, unless they were so trespassing with the owner's knowledge or through his neglect. The same rules were followed and the same distinctions made in *Bennett v. C. & N. W. R. Co.* 19 Wis. 145; *Galpin v. C. & N. W. R. Co.* 19 Wis. 604; *Fisher v. Farmers' L. & T. Co.* 21 Wis. 76; *Potter v. C. & N.W. R. Co.* 21 Wis. 372, 377; *Cun-*

*ningham v. Lyness,* 22 Wis. 245; *Butler v. M. & St. P. R. Co.* 28 Wis. 487. In *Dreher v. Fitchburg,* 22 Wis. 675, Mr. Justice PAINE reviewed the subject, and said: "Negligence has long been divided into three degrees, slight, ordinary, and gross." He then defines slight negligence and ordinary negligence. That opinion and such classification of the three degrees of negligence are fully approved in an opinion by DIXON, C. J., in *Ward v. M. & St. P. R. Co.* 29 Wis. 144; and he therein corrects some erroneous expressions in some of the former cases above cited. But the cases maintaining such distinction are too numerous to mention. A certain class of them, as to what constitutes gross negligence, were cited by Mr. Justice TAYLOR in an elaborate opinion in *Annas v. M. & N. R. Co.* 67 Wis. 46, 61. See, also, *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 667; *Lynch v. N. P. R. Co.* 84 Wis. 352.

Such classification of the degrees of negligence may not be the most philosophical or accurate, but it is such as was firmly established in the jurisprudence of this state long before any who now occupy this bench became members of this court. It has certainly been steadily and firmly adhered to during the last fifteen years. The supreme court of the United States, as indicated in the opinion of Mr. Justice DAVIS, in *Milwaukee & St. P. R. Co. v. Arms,* 91 U. S. 494, 495, has repeatedly "expressed its disapprobation of" such "attempts to fix the degree of negligence by legal definitions." Among the reasons there given in a quotation from an opinion by Mr. Justice CURTIS is that the signification of such definitions "necessarily varies according to the circumstances." He then refers to some English cases, and says: "'Gross negligence' is a relative term. It is, doubtless, to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence;' but, after all, it means the absence of the care that was necessary under the circumstances." Other courts of high standing have taken

a similar view of the subject. As an original proposition, it may have been more philosophical and wise. Some law writers, some judges, and some courts habitually use the terms "intentional negligence," "wilful negligence," "malicious negligence;" but most of them very properly repudiate such expressions as contradictory and absurd. 16 Am. & Eng. Ency. of Law, 392–399, and cases cited in the notes.

The distinguishing characteristic of negligence is inadvertence, or an absence of any intent to injure. Where there is simply an absence of that degree of care in the performance of duty which persons of extraordinary prudence are accustomed to use, the same has been designated by this court as "slight negligence." Where there is a want of such care as persons of ordinary prudence observe in the performance of duty, the same has been designated by this court as "ordinary negligence;" and that includes, not only mere inadvertence or inattention to duty resulting in an injury to another, but also a want of the means or capacity to prevent such injury when the same is known to be imminent. On the other hand, where a person, in the presence of imminent danger to another, has a duty to perform to prevent such other person from being injured, and, with knowledge of the danger and the present means and capacity to prevent it, rashly, recklessly, or wantonly fails to do what he can to prevent such injury, the same has been designated by this court as "gross negligence." Within the rules stated, we must hold that the motorman, in the case at bar, was not guilty of gross negligence, but, at most, of ordinary negligence.

3. The car appears to have been inspected the morning of the accident, and also immediately after the accident; and the undisputed evidence is that it was at both times found to be in good condition. There was no error, therefore, in the

court's directing the jury to find that the car was not in a defective condition at the time of the accident.

We perceive no reversible error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

PINNEY, J., dissents.