JAMES O'BRIEN *vs.* JAMES MCGLINCHY.

Cumberland. Decided December 19, 1878.

*Trial. Law and fact. Contributory negligence. New trial.*

It is a question of fact, and not of law, whether it be negligence on the part of parents to permit their child three and a half years old to be upon a public street unattended.

In an action by a child, *non sui juris*, for an injury caused by being run over upon a public street, it is immaterial that its parents negligently permitted it to be upon the street, provided the child at the time exercised for its safety that amount of care which the law would require of persons generally.

While it is generally a defense to an action of tort that the plaintiff's negligence contributed to produce the injury, still, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could be avoided by the use of ordinary care at the time by the defendant.

But this test would not govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness the plaintiff is injured; nor where the negligent act of the defendant takes place first and the negligence of the plaintiff operates as an intervening cause between it and the injury.

ON EXCEPTIONS AND MOTIONS from the superior court.

CASE by an infant three and a half years of age, by his father

and next friend, for negligence of defendant's teamster, Fitzgerald, declaring that he ran over the plaintiff with a horse and wagon, on Center street, Portland, November 2, 1875, and thereby the leg of the plaintiff was bruised and broken, etc.

There was evidence tending to show that Center street was one of the most frequented streets in Portland; that its width was about forty-five feet, and that the plaintiff was run over or against and hurt as alleged. Two witnesses, Angus McMillan and George L. Jordan, testified that just before noon of the day alleged they witnessed the catastrophe. McMillan testified that the wagon looked like one he painted for defendant; and Jordan that the driver said it was the defendant's team.

John Fitzgerald, called by the defendant, testified that he drove the defendant's team three days in November, 1875; that he knew nothing at the time about running over any boy, nor until about three weeks afterwards. A writing of the following tenor, dated January 6, 1876, signed by the witness' mark, and witnessed by Alfred L. Oxnard, was put in evidence by the plaintiff: " I was driving James McGlinchy's team the second day of last November, and ran over a small boy in Center street, but did not stop to see how bad he was hurt." The witness on cross-examination testified that he had been thrice in jail, twice for stealing.

The defendant's counsel requested the following instructions: " I. If a child is of too tender age to be permitted to go in the streets without the attendance and supervision of those having him in charge, their negligence and want of due care will have the same effect in preventing the maintenance of an action for an injury occasioned by the neglect of another, as would plaintiff's want of care if he were an adult.

" II. A child of the age of this child at the time of the alleged accident was of too tender an age to be permitted to go in the street unattended, within the meaning of the last instruction.

" III. That plaintiff cannot recover for the negligence of defendant's agent under the circumstances of this case, because of the negligence of its parents in allowing it to go unattended in the street, under the circumstances of this case.

" IV. Proof that team driven by defendant's agent ran over

plaintiff and caused the injury would not alone be sufficient to entitle plaintiff to recover ; but in order to recover, he must also prove that the running over was caused by negligence of defendant's servant, and that neither the negligence of plaintiff, nor of his parents, or whoever had charge of him, contributed thereto ; and that the burden is on the plaintiff to prove both such negligence on part of defendant's agent, and such want of contributory negligence on part of himself or of those who had charge of him."

The presiding justice gave the first and fourth requested instruction, but declined to give the second and third. The verdict was for the plaintiff for $1,100, which the defendant moved to set aside ; and he also alleged exceptions.

The defendant afterwards filed a motion for a new trial on the ground of newly discovered evidence, under which he produced evidence tending to show that the witness, Jordan, was not at Portland on the day alleged ; that he was then an operative at work in the Continental mill, Lewiston ; that John T. Oxnard, of Freeport, who Jordan testified was the first to talk with him about being a witness for the plaintiff, had before the trial written the following letter to the defendant, dated June 20, 1876, signed "From a friend," mailed Freeport, Maine, June 21 :

"Dear Sir :—I was to your place of business last week, but as you was away, I had some little conversation with your book-keeper in regard to the case now pending in superior court against you for your team running. over a little boy on Centre street. Your book-keeper wished me to write you or come and see you.

"Now I have reason to believe the whole thing to be a fraud ; that your team never run over the boy, and think I can show you how to get out of it. I will come to Portland and see you if you will send me $3.00 (three dollars) to pay expenses, as I told your book-keeper I would do, and then if you think I can do you any good, why then I shall expect you to pay me a fair thing to help you out of it, as I think I can do it without any trouble. If, after you talk with me, you think I cannot help you any, why then the $3.00, three dollars, that you send me will pay me in full. Please let me know by return mail, as I shall be looking

after the letter. Don't send any postal cards or any envelopes with your name on the outside (be sure); also return this letter with the money you send me, as I do my business right on the square. I will send you an envelope directed to me for you to send this letter back and the $3.00, three dollars. Please state what day you want me to come, giving me a few days notice, also you will find me up to just what I tell you. I do not wish my name known at present."

There was also evidence on the last motion that John T. Oxnard with the witness, McMillan, after the trial, met the defendant, when Oxnard said to the defendant, " If you and Putnam had taken my advice, I would have got you clear ; and as the case is now, I think I can get you clear, if you will go according to my directions."

*W. L. Putnam*, for the defendant.

*B. D. Verrill*, for the plaintiff.

PETERS, J.   This case is before us upon motions to set aside the verdict as against evidence and for newly discovered evidence, and upon exceptions to the rulings of the presiding judge.

The defendant contends that the judge at *nisi prius* should have ruled, as a matter of law, that it was negligence on the part of the parents of the plaintiff to permit their child three and a half years old to be unattended upon a public street. The judge allowed the jury to decide whether it was negligence or not. Our judgment is that it was not a question so free of doubt as to require the court to take it from the jury. Facts and circumstances in explanation of the presence of the child upon the street were to be considered, and different minds might draw different conclusions from them. It would be difficult to fix any standard of years as a test for the decision of cases of this kind. Of course there may be extreme cases either way, where the judge's duty would be to pronounce upon the facts himself instead of submitting them to the jury. But where the line is doubtful between the two extremes, it is usually the vocation of the jury to determine the question, under such instructions from the court as may be proper and suitable to the case before them.   *Kellogg* v. *Cur-*

*tis*, 65 Maine, 59. *Hobbs* v. *Eastern Railroad*, 66 Maine, 572, 577. *Mulligan* v. *Curtis*, 100 Mass. 512. *Lynch* v. *Smith*, 104 Mass. 52. *Brooks* v. *Somerville*, 106 Mass. 271, 275. *Patrick* v. *Pote*, 117 Mass. 297. *Drew* v. *6th Avenue Railroad*, 26 N. Y. 49. *Mangam* v. *Brooklyn Railroad*, 38 N. Y. 455. *Eckert* v. *Long Island Railroad*, 43 N. Y. 502. *Ihl* v. *Railroad*, 47 N. Y. 317. *Blanchard* v. *Steamboat Co.*, 59 N. Y. 292. Proffatt on Jury Trial, §§ 263, 298.

The defendant next contends that this court should decide, under the motion for a new trial, as a matter of fact, in view of all the testimony in the case, that the child was negligently permitted by its parents to be upon the street unattended at the time of the accident. But if the parents were guilty of such negligence, and it be admitted (as it is) that the child is chargeable with the negligence of its parents, still it does not necessarily follow that the child is thereby debarred from a .recovery for the negligence of the defendant. That would depend upon whether the act of the parents, in a proper sense, contributed to the injury or not. In a certain sense, it undoubtedly did contribute to it. That is, the accident could not have happened without it. It made the accident possible. But whether in a legal sense it contributed to it would depend upon all the facts and circumstances.

If the child, at the time of the accident, exercised as much care and caution as any person of the years of discretion could exercise under the same circumstances, then the parental negligence did not contribute to the injury. It matters not whether the plaintiff was three or thirty years of age, if he managed for his safety while upon the street with the amount of care which the law requires of persons generally. And to this point there are several direct authorities. In *McGarry* v. *Loomis*, 63 N. Y. 104, the head-note of the case is this: "In an action to recover damages for injuries to a child, *non sui juris*, occasioned by the negligence of defendant, negligence on the part of the parents is no defense, where it appears that the child has not committed or omitted any act which would constitute contributory negligence in a person of years of discretion. Negligence can only be imputed to the child through the parents, but where the child has

done no negligent act the conduct of the parents is immaterial." *Lynch* v. *Smith*, 104 Mass. 52, and other cases are to precisely the same effect. See Bigelow's Cases on Torts, 730.

In the case supposed, the negligence of the defendant and that of the parents would not operate conjunctively. The conduct of the parents would not be a part of the transaction through which the injury befel the plaintiff, but another transaction prior thereto and distinct therefrom. It may have been the "agency" or "medium" or "opportunity" or "occasion" or "situation" or "condition," as it is variously styled, through or by which the accident happened; but no part of its real and controlling cause. The fault of the parents would be the remote cause, while that of the defendant would be the proximate or the more proximate cause, the *proxima causa* or *causa causans*; the one a passive and the other an active agency; the one having but a casual and the other a causal connection with the ultimate event.

Generally, it is a defense to an action of tort that the plaintiff's negligence contributed to produce the injury. But in cases falling within the foregoing description, where the negligent acts of the parties are distinct and independent of each other, the act of the plaintiff preceding that of the defendant, it is considered that the plaintiff's conduct does not contribute to produce the injury, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care at the time by the defendant. This rule applies usually in cases where the plaintiff or his property is in some position of danger from a threatened contact with some agency under the control of the defendant when the plaintiff cannot and the defendant can prevent an injury. Lord Ellenborough, in *Butterfield* v. *Forrester*, 11 East, 60, a much quoted case, declared that "one's being in fault will not dispense with another's using ordinary care." Blackburn, J., in *Radley* v. *Railroad Co.*, L. R. 10 Ex. 100, expresses the idea in this wise: "A man is bound, when he puts himself in a place where he knows other persons are coming, not only for his own safety, but for that of his neighbors, to take reasonable care of himself and of his property; but, whether he does this or not, it does not relieve anybody else who comes there from the duty of

also taking reasonable care." The following are pertinent authorities hereto. *Bigelow* v. *Reed*, 51 Maine, 325. *Baker* v. *Portland*, 58 Maine, 199. *Garmon* v. *Bangor*, 38 Maine, 443. *Keith* v. *Pinkham*, 43 Maine, 501. *Norris* v. *Litchfield*, 35 N. H. 271. *State* v. *Railroad*, 52 N. H. 528. *Trow* v. *Vt. Central*, 24 Vt. 487. *Isbell* v. *Railroad*, 27 Ct. 393. *Steele* v. *Burkhardt*, 104 Mass. 59. *Smith* v. *Conway*, 121 Mass. 216, 219. *Mayor, etc.* v. *Brooke*, 7 Q. B. 377. *Lygo* v. *Newbold*, 9 Ex. 302, 303. Sher. & Red. on Neg. §§ 25, 36, *et passim.* Wharton's Neg. § 300, *et seq.*; and numerous citations in notes. But this principle would not govern where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them; nor where the negligent act of the defendant takes place first and the negligence of the plaintiff operates as an intervening cause between it and the injury.

And there may be other exceptions. It is impossible to establish rules under which all cases can be arranged, considering the variety of circumstances under which the question of negligence arises. Bigelow's Torts, 724. *Murphy* v. *Deane*, 101 Mass. 455. *Barnes* v. *Chapin*, 4 Allen, 444. *Hibbard* v. *Thompson*, 109 Mass. 286. See, also, cases and authorities before cited.

The defendant, however, does not admit that the plaintiff stands in the favorable attitude supposed. He claims that upon this point the plaintiff's case fails. It is true, as contended, there is no evidence of a direct character as to how the accident happened. No one testified to seeing the occurrence. The driver of defendant's wagon swears that he has no knowledge whatever of running over the child. The jury must have found this testimony to be untrue, or the plaintiff could not have got the verdict. So finding, they were justified in drawing inferences of fact therefrom unfavorable to the defendant. They would have a right to believe that the witness (called by defendant) was wholly in fault in causing the injury, as an explanation of his concealing the truth about it. Therefore it became the important question of the case to decide whether the defendant's team did actually run

over the boy or not. Upon that point the newly discovered evidence satisfies us that a new trial should be granted.

*Exceptions overruled; motion sustained.*

APPLETON, C. J., WALTON, BARROWS, LIBBEY and VIRGIN, JJ., concurred.