ERNEST H. DYER

*vs.*

CUMBERLAND COUNTY POWER & LIGHT COMPANY.

Cumberland.    Opinion November 3, 1921.

*The finding of the jury not so manifestly wrong as to warrant the verdict being disturbed by the court. The defendant's servant in operating the electric car was charged with the duty the defendant owed to travelers lawfully upon the highway to keep a lookout and exercise all reasonable care to avoid injuring them, and must have either seen the plaintiff in his position of peril and misjudged his distance from the track, or failed to exercise that due care which would have caused him to discover him in time to have avoided the accident. In the application of the rule of the "last clear chance" it is not necessary that defendant has actual knowledge of the plaintiff's peril. If he owed the plaintiff a duty to avoid injuring him, and in the performance of that duty should have discovered the plaintiff's peril in time to have avoided the accident by stopping the car, even though plaintiff was clearly guilty of contributory negligence but could not extricate himself from his perilous position, he is liable. Alleged newly discovered evidence purely cumulative. Damages clearly excessive and plaintiff to remit all over seventy-five hundred dollars, or motion sustained.*

Upon a motion by the defendant for a new trial on the usual grounds and also upon newly discovered evidence,

*Held:*

That as to the manner in which the accident occurred, the jury must have found in favor of the plaintiff's contention and in this respect the jury's finding is not so manifestly wrong as to warrant the verdict being disturbed by this court;

That the defendant company owed a duty to travelers lawfully upon the highway to keep a lookout and exercise all reasonable care to avoid injuring them;

That in view of these conclusions, the defendant's servant operating the electric car must either have seen the plaintiff in his position of peril and misjudged

his distance from the track, or in the exercise of due care should have discovered him in time to have avoided the accident;

That in applying the rule of the "last clear chance," it is not necessary for the defendant to have actual knowledge of the plaintiff's peril, if he owed the plaintiff a duty of keeping a lookout to avoid injuring him, and in the performance of that duty should have discovered the plaintiff's peril in time to have avoided the accident;

That while the plaintiff was clearly guilty of contributory negligence in stopping his truck so near the tracks of the defendant and a duty also rested upon him to keep a lookout for the car he knew was behind him, the jury may have found, if the motorman could have stopped the electric car, as he testified he did within a distance of one foot, or even a greater distance, after discovering the plaintiff's danger, that after the plaintiff could no longer extricate himself from his perilous position, the motorman could still have stopped the car in time to avoid the accident;

That it must be presumed that proper instructions were given the jury as to the rights of the parties under these conditions, and while this court might have reached a different conclusion upon the evidence, it is unable to say, as upon the other branch of the case that a finding of the jury that the defendant had the "last clear chance" of avoiding the accident was clearly wrong;

That the alleged newly discovered evidence, upon which the second motion of the defendant is based, is purely cumulative and it cannot be said that if presented to another jury it would arrive at a different verdict;

That upon the question of damages, the court, after carefully considering the evidence, is of the opinion that they are clearly excessive and unless the plaintiff remit all over seventy-five hundred dollars, the motion of the defendant must be sustained.

On motions for new-trial by defendant, one on the usual grounds and the other upon newly discovered evidence. An action to recover damages for personal injuries resulting from a collision between an automobile of the plaintiff and an electric car of the defendant, due to alleged negligence of the defendant in the operation of one of its street cars. A verdict for $11,500.00 was returned for plaintiff by the jury. Motion on ground of newly discovered evidence denied. Motion on ground damages are excessive sustained, unless plaintiff within thirty days after the receipt by the clerk of the rescript, remit all of the verdict over seventy-five hundred dollars as of the date of the verdict.

The case is fully stated in the opinion.

*Hinckley & Hinckley*, for plaintiff.

*Bradley, Linnell & Jones, and William Lyons*, for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, WILSON, DEASY, JJ.

WILSON, J.   An action to recover damages for personal injuries due to alleged negligence of defendant company in the operation of its street cars.   For the third time the case comes before this court. Once on a motion by defendant for a new trial; a second time on exceptions by the plaintiff to a directed verdict for the defendant; and now upon motions for a new trial by the defendant, one on the usual grounds and the other upon newly discovered evidence. Twice a jury at *nisi prius* has found for the plaintiff.   It is, of course, regrettable that litigation should be prolonged, but the trials have been zealously contested and additional evidence and new questions have been presented.

Upon the first motion for a new trial, 117 Maine, 576, this court was of the opinion that the contention of the defendant as to the manner in which the accident occurred was so clearly established that the jury must have erred in the conclusion reached by them.

When the case again came before the court, 119 Maine, 224, on exceptions by the plaintiff to the ruling of the Justice presiding at *nisi prius*, a majority of the court were of the opinion that upon the evidence the issue as to how the accident occurred—whether the electric car ran into the truck of the plaintiff while at rest in the street, or whether the plaintiff momentarily lost control of his truck and it ran into the electric car—was so close that a verdict either way would not be so manifestly unsound as to warrant interference by this court.   There being in the opinion of a majority of the court, sufficient evidence on which the jury might have found that the accident occurred in the manner claimed by the plaintiff, viz.: that he had passed the electric car and stopped by the side of the track to allow some boys to cross the street in front of him, and that when the electric car upon making the curve to enter the single track at this point, its fender and chain supporting it projected far enough beyond the track to extend under the step and mud guard of the truck and striking the front wheel, all combining to lift up that side of the truck, and finally tipping it over on its side, it raised the question whether, even though plaintiff was negligent in stopping so near the track, the defendant company should not in the exercise of due care have discovered the plaintiff in his place of peril in time to have

stopped the car and avoided the accident. The majority of the court was of the opinion that this question under proper instructions should have been submitted to the jury and sustained the plaintiff's exceptions.

Upon the third trial the jury found a verdict for the plaintiff in the sum of eleven thousand five hundred dollars and on the defendant's motion for a new trial on the usual grounds the question of whether the verdict is clearly wrong is again before this court.

Upon the evidence now presented we see no reason to change the opinion expressed in the 119 Maine, 224, that the jury in order to arrive at its verdict must have found that the accident occurred substantially in the manner described by the plaintiff and his witnesses, and that upon this point, there being no more inherent improbabilities in the contentions of the plaintiff than in those of the defendant, the finding of the jury is not so manifestly unfounded as to require the interference of this court, and that the other issues involved must be determined upon this assumption as to the manner in which the collision took place.

But as indicated then, even though the accident occurred in the manner described by the plaintiff, the court is still of the opinion that he was clearly negligent in stopping his truck so near the defendant's track knowing that a car was following behind him. Such a situation, we think, clearly raises the question of whether the negligence of the plaintiff in placing himself in the position of danger and failing to remove his truck in time was the proximate cause of his injuries, or whether the defendant, owing a duty to all travelers lawfully using the street, of keeping watch to prevent injuries being done to persons or teams, ought, in the exercise of due care in the performance of that duty, to have discovered the plaintiff in his position of danger in time to have avoided the collision, and its failure to do so should be regarded as the proximate cause.

The learned counsel for the defendant company strenuously urges, however, that the doctrine known as the "last clear chance" has no application to the facts in this case, because even if the accident occurred in the manner claimed by the plaintiff and his witnesses it does not appear that the defendant's servant had actual knowledge of the plaintiff's position of danger in time to avoid the accident, and also that the negligence of the plaintiff actually continued up to the moment of the collision.

The principles governing the application of the doctrine of the "last clear chance" have been so frequently stated by this court that to restate them can serve no purpose, as no new questions are presented by the facts in this case, unless the fact that it does not appear that the defendant's motorman had any knowledge of the plaintiff's peril prior to the accident modifies the application of this rule. The rule of the "last clear chance" is generally regarded as having first received judicial sanction in *Davies* v. *Mann*, 10 M. & W., 546, and the confusion that has arisen in the different jurisdictions since its application in that case shows the danger of attempting to lay down a rule broad enough to apply in all cases.

It may well be doubted whether the statement of the rule by Baron Parke in that early case has been or can be improved upon as a general statement: "Although there may have been negligence on the part of the plaintiff, yet unless he might by the exercise of ordinary care have avoided the consequence of the defendant's negligence, he is entitled to recover." Or in other words, if at any point of time in the succession of events or acts leading up to or resulting in the accident and the plaintiff's injuries, the plaintiff, though previously negligent, could not thereafter by the exercise of ordinary care have averted the accident, but the defendant by the exercise of ordinary care on his part could have done so, any prior negligence of the plaintiff in creating the dangerous situation is regarded only as a condition and not the proximate cause of the injury. *French* v. *Grand Trunk Railway Co.*, 76 Vt., 441; *Southern R. R. Co.* v. *Bailey*, 110 Va., 833, 840; *Atwood* v. *Railway Co.*, 91 Maine, 399.

Assuming the accident occurred in the manner claimed by the plaintiff, the defendant's counsel concede that if the motorman had seen the plaintiff's truck stopped beside the track in time to have avoided the collision it would not be excused by any prior negligence of the plaintiff. That under such conditions the case could not fairly be distinguished in principle from that of *Atwood* v. *Railroad Co.*, supra.

It is urged, however, that the case at bar is distinguished from the last cited case by the fact that the motorman in the instant case did not discover the plaintiff's peril until the accident occurred. The question of whether actual knowledge by the defendant of plaintiff's position of peril is necessary to the application of the "last clear chance" rule to a given case has never been directly before this court

prior to this case, though it has on several occasions indicated its position in this respect, as it did on plaintiff's exceptions, 119 Maine, 224, 227; *Fickett* v. *L. A. & W. St. Ry.*, 110 Maine, 267, 271; *Glidden* v. *Bangor Ry. & El. Co.*, 112 Maine, 354.

· It is true that the courts in some jurisdictions have refused to apply this rule unless the position of the plaintiff was actually discovered by the defendant in time to have avoided the injuries. *Bourrett* v. *Chicago & N. W. Rwy. Co.*, 152 Iowa, 579; *Todd* v. *Railroad*, 135 Tenn., 92; *Starck* v. *Pacific & E. R. R. Co.*, (Cal.), L. R. A., 1916, E. 58, and see notes L. R. A., 1915, C. 48, 36 L. R. A., (N. S.), 957 where the cases on this question are collected and reviewed. But the trend of the cases and the weight of authority, we think, now hold that where as in the case at bar the defendant owed a duty to the plaintiff as a traveler on a public highway to keep watch and use all reasonable care to avoid injuring him, *Flewelling* v. *Railroad Co.*, 89 Maine, 585, 594; and the performance of that duty would have resulted in the discovery of the plaintiff's position in time to have avoided the accident by the exercise of ordinary care on the part of the defendant, unless the negligence of the plaintiff can be said to have actively continued up to the moment of the accident, as in *Butler* v. *Railway Co.*, 99 Maine, 149; *Denis* v. *St. Railway Co.*, 104 Maine, 39, 47; *Philbrick* v. *A. S. L. Rwy.*, 107 Maine, 429, 434; *Smith* v. *Somerset Traction Co.*, 117 Maine, 407, the doctrine of the "last clear chance" may be properly invoked by the plaintiff. *Indianapolis Traction Co.* v. *Kidd*, 167 Ind., 402, 411; *D. & R. G. R. R. Co.* v. *Buffehr*, 30 Colo., 27; *Nichols* v. *C. B. & Q. R. R. Co.*, 44 Colo., 501; *Kolb* v. *St. Louis Rwy. Co.*, 102 Mo. App., 143; *Teakle* v. *R. R. Co.*, 32 Utah, 279, 291; *Payne* v. *Healey*, (Md.), 114 Atl., 693; *Acton* v. *Moorhead R. R. Co.*, 20 N. D., 435; *Birmingham Rwy. Light and P. Co.* v. *Brantley*, 141 Ala., 614; *Dickson* v. *Chattanooga Rwy. & Light Co.*, 237 Fed. Rep., 352; Thompson on Neg., Vol. I, Sec. 231; Vol. II, Secs. 1476, 1477. "Where the defendant owes no duty to the plaintiff as in the case of trespassers there may be sound reasons for adhering to the rule of actual knowledge." Shearman and Redfield on Neg., 5th Ed., Sec. 484. In the case of railroads, however, using the public streets, public policy, we think, requires them to be held responsible in case injuries to those lawfully using the highways result from the failure on the part of their servants to use reasonable care in keeping a lookout for travelers, provided, of course, the traveler was not also

actively negligent at the time and thereby contributed to his own injury, and the defendant's servants if they had exercised reasonable care could have discovered the plaintiff's peril in time to have avoided injuring him.    Otherwise, motormen of street cars might be guilty of the grossest negligence through inattentiveness to their duties,— talk with passengers in their cars, or gaze at people on the sidewalks,— and unless it was shown that they actually saw the plaintiff in his exposed position the railroad would escape all liability.    Such a doctrine has been characterized, and not too strongly, by Thompson in his work on Negligence, Vol. II, Sec. 1476, as "a miserable doctrine in favor of which not one word can be said."

Assuming the accident in the case at bar happened as contended by the plaintiff and his witnesses, it is perfectly clear that the motorman operating the defendant's car must either have seen the plaintiff's truck and misjudged its distance from the track and the clearage required for him to pass or in the exercise of ordinary care he should have discovered it in time to have avoided the collision.    The only question remaining, then, is:    Was the plaintiff also actively negligent at the moment of the collision and so contributed to the accident. If so, of course, he cannot recover.

Since there is no evidence in the case that the defendant's servant did actually discover the plaintiff's position of danger prior to the accident, but on the contrary the motorman positively denies it, even though in the exercise of due care he should have done so, the plaintiff being in a position where ordinary care on his part required him to keep a watch for a car which he knew was approaching behind him, there is much force in the defendant's contention that that duty actively continued to the moment of the collision, and that he cannot be said to have been merely passively negligent, as the negligence of the plaintiff in *Atwood* v. *Railroad Co.,* supra was characterized in *Denis* v. *St. Railroad Co.,* 104 Maine, 39, 47, and hence the negligence of the parties was in fact concurrent.

The jury, however, may have found from the evidence that there came a time in the succession of events leading up to the collision when no act of the plaintiff could have avoided the collision, but the motorman could still have stopped the car if he had discovered the plaintiff's danger.    If so, from that time the negligence of the plaintiff may be said to have ceased, or at least no longer in any way contributed to his injuries.

The plaintiff's truck according to his testimony and the direct evidence of four or five other witnesses was at rest. Assuming the engine to have been running he could not move a ten or twelve foot truck out of the danger zone in an instant. The jury, therefore, may have found that if the motorman could by applying his emergency brakes have stopped the electric car within "a foot or a little more," as he testified he did at the time of the collision, or even within five feet, that when the plaintiff, notwithstanding his prior negligence, could no longer have avoided the collision, even if he had seen the approaching car and then did everything possible to move his truck from the place of danger, the defendant's servant could still, if he had exercised ordinary care, have discovered the plaintiff's exposed condition and stopped the car in time to have avoided the collision.

We must assume since no exceptions were taken that the jury was properly instructed as to the rights and duties of the parties under these conditions. This court might have arrived at a different conclusion if it had heard and seen the witnesses. The case presented is a very close one upon the evidence; but the facts upon which the case turns are distinctly within the province of the jury to determine. On the whole, after carefully reviewing the testimony, we are unable to say that the verdict of the jury is so manifestly wrong either upon the question of the manner in which the accident occurred, or as to which party had the last clear chance to avoid the collision as to warrant this court in again interfering with the jury's finding. *Atwood* v. *Railroad Co.,* 91 Maine, 399, 405.

The motion based upon newly discovered evidence must also be denied. The new evidence is only cumulative, and we cannot say that if presented to another jury it would arrive at a different result. *Parsons* v. *Railway,* 96 Maine, 503.

While the defendant did not argue the question of excessive damages, the court is of the opinion that they are so clearly excessive that they must be substantially reduced or a new trial should be ordered. It is true the plaintiff suffered a serious and painful injury and that his expenses for medical care and treatment were large; but his physician, a surgeon of wide repute and standing, says that in his opinion he will recover and that the broken bone will become strong, though he may not have the full use of his foot and ankle. Considering all these elements together with his loss of earnings since

the accident and his probable loss of earning until full recovery, or in the future, we are of the opinion that unless the plaintiff shall remit all of the verdict over seventy-five hundred dollars a new trial should be ordered.

> *Motion on ground of newly discovered evidence denied.*
>
> *Motion on ground damages are excessive sustained unless the plaintiff, within thirty days after the receipt of the rescript by the clerk, remit all of the verdict over seventy-five hundred dollars, as of the date of the verdict.*