Switzer, Appellant, vs. Detroit Investment Company, Respondent.

*November 17—December 8, 1925.*

*Carriers: Passenger elevators: Degree of care required: Who are passengers: Person pushing door open and stepping into shaft: Contributory negligence: Last clear chance doctrine.*

1. One who, on finding an elevator door partially open, opened it wide, stepped into the shaft, and, while hanging suspended therein, was forced to release his hold by the elevator coming down upon him, is not a passenger toward whom defendant, as a common carrier, was required to exercise extraordinary care.  p. 332.

2. The unlatched and partially open door was a warning and not an invitation to enter, and plaintiff, in further opening the door and projecting himself forward into the shaft, failed to exercise ordinary care for his own safety, and was properly nonsuited, in the absence of a showing of gross negligence on the part of the operator, the doctrine of the last clear chance or supervening negligence not obtaining in this state.  p. 333.

CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: CHESTER A. FOWLER, Judge.  *Affirmed.*

Defendant owned an eight-story building on the corner of East Water and Detroit streets in Milwaukee, equipped with a passenger elevator with a floor space of about eight by ten feet.  Shortly after noon January 11, 1922, plaintiff, a man over fifty, who had visited the building a number of times before to transact business with a tenant on one of the upper floors, entered it for the same purpose.  The front door of the building and the door of the elevator faced the west and were twelve to fifteen feet apart.  Plaintiff recognized and greeted the regular elevator operator, who was standing at the front door and who remained there until after the accident.  The plaintiff testifies that he found the elevator door unlatched and opened toward the south some three or four inches.  With the back of his right hand and

the weight of his body he shoved it wide open and stepped forward with his left foot and part of his body. Then realizing that the elevator was not there, he grasped the edge of the open elevator door with his right hand and hung with his body substantially in the shaft, except his right leg and foot, the latter remaining on the floor of the hall, his head being some distance forward into the shaft and about eighteen feet above the basement floor. While in this position he screamed several times, and turning his head upward noticed the elevator coming down and to a stop a little below the level of the second floor, which was about sixteen feet above the first. The elevator then proceeded downward, and one part of it, probably the plunger or projection below the center of the elevator, struck the top of his head, the platform his right hand, thereby forcing him to let go of his hold and fall to the basement. As a result he received severe injuries.

He received compensation from his employer, and thereafter, the employer and the insurance carrier refusing to institute an action, he brought this suit.

The elevator at the time of the accident was in charge of the relief operator, who was called as an adverse witness and testified that he was slowing down and brought the elevator to a full stop when the floor of the same was about one and a half or two feet below the level of the second floor and at the time he heard a cry. He then looked down from the front of the elevator and saw the plaintiff with part of his body above the first floor. He testified that he was scared and does not know whether the plaintiff's hands were holding onto anything, but does not think so, and that when he came to and looked around he saw plaintiff going down the shaft. He was not asked as to what he did after that.

The complaint alleged, among other things, as grounds for the right of recovery, the leaving of the door of the elevator open; the employing of an incompetent and inefficient operator; a failure to cause the elevator to be operated

with the highest degree of skill and care reasonably to be expected from human diligence and foresight in view of the mode and character of the conveyance; negligence in permitting said elevator to descend under such conditions to the first floor. There was no charge of gross negligence.

Defendant's motion for nonsuit was granted, and from the judgment dismissing the action plaintiff has appealed.

For the appellant there was a brief by *Walter F. Mayer* and *James E. Coleman,* both of Milwaukee, and oral argument by *Mr. Mayer.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Nathan Glicksman.*

ESCHWEILER, J.    While those responsible for the operation of passenger elevators in buildings such as this are classed as common carriers so far as the extraordinary degree of care required of them by the law is concerned (*Ferguson v. Truax,* 136 Wis. 637, 118 N. W. 251), yet here plainly the plaintiff could not be considered a passenger in any sense of that term, and therefore the allegations of the complaint in that regard are not applicable to the facts here shown. In his complaint plaintiff did not assert that there was on the part of the operator that which is designated in this jurisdiction as gross negligence.

Plaintiff here admitted that he did not look to see if the elevator was in proper position, nor at the dial, if any such there were above the door, to learn the possibly indicated position of the elevator in the shaft, and he made no claim of insufficiency of light. There can therefore be no doubt that plaintiff, in further opening the door and projecting himself forward into the shaft, failed to exercise ordinary care for his own safety. He placed himself in danger not only of falling down the shaft, but also from movement of the elevator in the shaft. The unlatched elevator door, as

Switzer v. Detroit Investment Co. 188 Wis. 330.

plaintiff approached, open as it was not to exceed four inches, was a warning signal rather than an invitation to enter. *Bremer v. Pleiss,* 121 Wis. 61, 98 N. W. 945.

Plaintiff contends, however, that the real proximate cause of his injuries was the alleged negligence of the elevator operator in permitting the elevator to descend from the point at which it had stopped just below the second floor and after the operator knew of plaintiff's peril, and that any prior negligence on his part in placing himself in such a position is immaterial because it ought not to be considered a proximate cause contributing to his injuries.

Situations such as are here presented have been often met and discussed under what is frequently denominated as the doctrine of "the last clear chance," "supervening negligence," or "discovered peril." The term "comparative negligence" is also sometimes used, but it should perhaps more accurately be confined to situations where the law permits of the jury's determination of the respective proportions where each party is found negligent, as has been authorized by statute in certain actions against railroads, as presented in such cases as *Tidmarsh v. C., M. & St. P. R. Co.* 149 Wis. 590, 136 N. W. 337. Many courts have upheld the right of a plaintiff to recover, there being but ordinary negligence as distinguished from gross negligence, by defendant, intervening the injury and the negligence of plaintiff in placing himself where the accident occurred; some, such as *Dyer v. Cumberland County P. & L. Co.* 120 Me. 411, 115 Atl. 194, stating the rule to be that the prior negligence of plaintiff creates but a condition and is not to be regarded as the proximate cause; others, like *Chunn v. City & Suburban Ry.* 207 U. S. 302, 309, 28 Sup. Ct. 63, holding that such subsequent failure to use reasonable care may be found to be the sole cause of the injury. A list of the holdings may be found in 29 Cyc. 530, and in a note to 28 A. L. R. 283.

This court, however, after repeated and full consideration of the question and of the decisions on both sides, has refused to recognize such a doctrine or rule of law as here contended for by plaintiff, and has suggested in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593 (84 N. W. 823), at p. 604, that for any change in such so declared public policy resort should be had to legislative action.

In *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866, there was a full discussion of the subject and a holding that there could be no recovery in the absence of a showing of gross negligence on a motorman's part after he discovered plaintiff's perilous position caused by plaintiff's negligence, and that a finding of a lack of ordinary care by the motorman was insufficient to support a recovery. This case declares (p. 111) that the doctrine of the three degrees of negligence—slight, ordinary, and gross—is here firmly established, and this doctrine is reiterated in *Astin v. C., M. & St. P. R. Co.* 143 Wis. 477 (128 N. W. 265), at p. 483; and again in *Bentson v. Brown,* 186 Wis. 629, 633, 203 N. W. 380, 38 A. L. R. 1417, and note. The same division of degrees is also recognized in *Altman v. Aronson,* 231 Mass. 588, 593, 121 N. E. 505.

The subject was again considered and the same result reached in *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446, citing (p. 346) with approval what was said in *White v. C. & N. W. R. Co.* 102 Wis. 489 (78 N. W. 585), at p. 496, that where defendant's negligence is short of that defined as gross, contributory negligence by plaintiff defeats recovery. Again in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 601, 84 N. W. 823. In *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663, the court said that a finding of contributory negligence by plaintiff required a judgment for defendant even though it was found that a motorman failed to exercise ordinary care after discovering the danger of a collision (p. 158); and

this is cited with approval in *Owen v. Portage Tel. Co.* 126 Wis. 412, 105 N. W. 924. See, also, *Lotharius v. Milwaukee E. R. & L. Co.* 157 Wis. 184, 146 N. W. 1122.

Several cases in this court are cited by appellant as supporting the position he takes here, but such cases are expressly or by implication overruled and no longer correct expositions of the law, such as the following: In *Woodard v. West Side St. R. Co.* 71 Wis. 625, 38 N. W. 347, without discussion or consideration of authorities, it was held that a plaintiff might recover for injuries caused by being dragged alongside of a street car which he had carelessly tried to board and being caught in the door handle by a ring on his finger, if the driver could have avoided the injury by the exercise of ordinary or reasonable care after he was notified of plaintiff's peril. This decision does not seem to be cited in any subsequent case. The same doctrine, and in the same manner, was declared in *Valin v. Milwaukee & N. R. Co.* 82 Wis. 1, 51 N. W. 1084, that supervening negligence need not be gross negligence in order to authorize recovery (p. 16). This case is quoted in the *Lockwood* and *Bolin Cases, supra,* and declared out of harmony with other cases and to be incorrect. In *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659, 53 N. W. 743, 54 N. W. 106, the rule stated in the *Valin Case, supra,* was apparently recognized as the law but held not applicable under the facts there.

The trial court, therefore, under the law here was required to grant the motion for nonsuit as he did.

*By the Court.*—Judgment affirmed.

CROWNHART, J. (*dissenting*). I dissent from the opinion of the court in this case. The rule there laid down, I think, extends the doctrine of contributory negligence as a defense beyond that of any case heretofore decided in this state, and it is contrary to the almost universal decisions of other

jurisdictions.    It is contrary to the decisions of this court
prior to 1900.    As early as 1859. Mr. Chief Justice Dixon,
speaking for the court, adopted the rule of Vermont, as
follows:

". . . When the negligence of the defendant is proximate
and that of the plaintiff remote, the action can then well be
sustained, although the plaintiff is not entirely without
fault.    This seems to be now settled in England and in this
country.    Therefore, if there be negligence on the part of
the plaintiff, yet if at the time when the injury was com-
mitted it might have been avoided by the defendant in the
exercise of reasonable care and prudence, an action will lie
for the injury." *Stucke v. M. & M. R. Co.* 9 Wis. 202, 215.

The same principle was stated in *Woodard v. West Side
St. R. Co.* 71 Wis. 625, 633, 38 N. W. 347, in the follow-
ing language:

"Even if the plaintiff was guilty of negligence in attempt-
ing to get on the car while it was in motion, yet if the jury
find from the evidence in the case that the driver was noti-
fied that the plaintiff had fallen and was being dragged at
the tail of the car, and the jury also find that the driver
could have avoided the injury by the exercise of reasonable
care, then the defendant is liable."

In 1892 the rule was stated by Mr. Justice Pinney,
speaking for the full court, in a very carefully considered
opinion, to wit:

"The negligence of the deceased will not enable the com-
pany to escape liability if the act which caused the injury
was done by the defendant after it discovered his negligence,
and if the defendant could have avoided the injury in the
exercise of reasonable care. *Morris v. C., B. & Q. R. Co.*
45 Iowa, 29, 32, and cases there cited.    This rule is well
sustained by numerous authorities; and such supervening
negligence, as the deceased was not a trespasser, need not
be *gross* negligence in order to authorize a recovery.    In
such a case it is enough that the defendant, by the exercise
of reasonable care and prudence, might have avoided the

consequences of the plaintiff's negligence. *Inland & S. C. Co. v. Tolson,* 139 U. S. 551, 558, 11 Sup. Ct. 653; *Radley v. L. & N. W. R. Co.* L. R. 1 App. Cas. 754, 759; *Scott v. D. & W. R. Co.* 11 Ir. C. L. 377; *Austin v. New Jersey S. Co.* 43 N. Y. 75, 82." *Valin v. M. & N. R. Co.* 82 Wis. 1, 16, 51 N. W. 1084.

In the *Valin Case* it is also said at page 15:

". . . Those in charge of locomotives and passing trains must not neglect to act with the care, caution, and tenderness of human safety and life plainly required by the common dictates of humanity."

The same rule should apply to a passenger elevator.

The general rule as stated in other jurisdictions is given in 20 Ruling Case Law, p. 138, § 114, as follows:

"The proposition has been formulated in a great many opinions that the negligence of a plaintiff will not bar him of recovery if it is shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence. This proposition has been referred to sometimes as the doctrine of 'last clear chance,' sometimes as the humanitarian doctrine, and occasionally as the rule of *Davies v. Mann* [10 M. & W. 546]. As it usually is expressed, a person who has the last clear chance or opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered in law solely responsible for such accident. The supreme court of the United States thus lays down the doctrine of contributory negligence as modified by that of the last clear chance: 'Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years: that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.' The doctrine really means, however, that even though a

person's own acts may have placed him in a position of peril, yet if another acts or omits to act with knowledge of the peril, and an injury results, the injured person is entitled to recover."

To the same effect see 29 Cyc. 529, where it is said:

"The negligence of the person injured will not defeat recovery if the injury is disconnected from his act by an independent cause, there being no legal contribution to the injury.

"Where the negligence of defendant is the proximate cause and that of the person injured is the remote cause, an action may be maintained although plaintiff was not entirely free from fault.   Where the act or omission of the person injured amounts merely to an antecedent occasion or condition of the injury remote in the sense of causation it is not contributory negligence.   So if the negligence of the person injured did not occur at the time of the injury, and preceded it in point of time and was independent of that of defendant, a recovery is not barred thereby.   But the negligence of a person injured is not remote although its inception was prior to that of defendant where it continued up to the time of the accident."

In *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 109, 65 N. W. 866, Mr. Chief Justice CASSODAY, writing the opinion, said:

"But it is vigorously urged that the case at bar comes squarely within the ruling of this court in *Valin v. M. & N. R. Co.* 82 Wis. 1, 51 N. W. 1084.   The two cases are, however, broadly distinguishable."

And he then proceeds to distinguish between the cases.

But in *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446, Mr. Justice MARSHALL, writing the opinion, said: "*Valin v. M. & N. R. Co.* 82 Wis. 1, 51 N. W. 1084, is recognized as out of harmony with previous decisions of this court."   However, that statement was wholly unnecessary to the decision of that case.   Since then the *Valin Case* has not been followed.

Since the decision in the *Valin Case*, the considerations

of the law respecting contributory negligence have been with reference to the doctrines of comparative negligence, gross negligence, slight negligence, and ordinary negligence, with the result that the law is left in much confusion.

In the instant case the proximate cause of the injury was the starting of the elevator from its place of safety, down upon the plaintiff, after the operator knew of plaintiff's danger from such act.   Now, from this starting point of defendant's negligence there was no negligence whatever on the part of the plaintiff contributing to his injury.   He was doing the best he could to escape from his dangerous position.   I concede that his negligence in getting into the shaft was a bar to recovery on account of the negligence of the defendant in leaving the door open.   But it is a somewhat horrible doctrine that a person once guilty of negligence becomes an outlaw.

Let us suppose a case fitting that theory with the law: By reason of contributory negligence, joined with the negligence of another, a person is run down by an auto in a public street and badly injured so that he cannot arise.   May the driver of the auto, seeing his helpless condition, negligently run over him again without liability?   Or, may a second auto come along and carelessly run over him without liability?   The English court answered these questions, in a case where an ass was fettered in the street through the negligence of the owner, and the driver of a wagon coming along and seeing the animal there carelessly ran him down, and the owner was allowed to recover.   The trial judge told the jury that the mere fact of negligence on the part of plaintiff in leaving his donkey on the public highway was no answer to the action unless the donkey's being there was the immediate cause of the injury, and the appellate court said:

"All that is perfectly correct; for, although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to

prevent mischief.   Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road." *Davies v. Mann,* 10 M. & W. 546, 549.

This is a leading case, and has been generally followed in England and in this country.

As I understand the instant decision, it does not attempt to justify the doctrine as there laid down, but suggests that any change must be made by the legislature, and refers as authority therefor to the statement of Mr. Justice MARSHALL in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 602, 84 N. W. 823, to wit:

"The doctrine of contributory negligence applied here has the sanction of the common law from time immemorial, the support of most of the courts and standard text-writers, and half a century of the adjudications of this court.   To change it, otherwise than by legislative enactment, would be judicial usurpation."

Mr. Justice MARSHALL could not have had the principle announced in this case in mind, because it has never had the sanction of common law, nor of most, if any, of the standard text-writers, nor the support of many, if any, of the courts outside of Wisconsin, nor has it had the support of this court for half a century.   It has never been considered judicial usurpation for the court to reverse itself when it is wrong.   As was said by the late Mr. Chief Justice WINSLOW, quoting from another:

"A man should never be ashamed to own he has been in the wrong, which is but saying in other words that he is wiser today than he was yesterday."   *State ex rel. Postel v. Marcus,* 160 Wis. 354, 381, 152 N. W. 419.

I think it would be much better to overrule, if necessary, the decisions that are wrong, rather than to multiply them.

Because I think there is no precedent for the decision in this case as applied to the facts of the case, and if it be

held otherwise, because such precedents are against the over-
whelming authorities on the subject and against "the com-
mon dictates of humanity," as was said by Mr. Justice
PINNEY, I respectfully dissent.