**Donna CUSHMAN and Lee Cushman**

**v.**

**Katherine PERKINS.**

Supreme Judicial Court of Maine.

Sept. 20, 1968.

Lawrence P. Mahoney and Robert C. Robinson, Portland, for plaintiffs.

Woodman, Thompson, Willard & Hewes, by Richard D. Hewes, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WEATHERBEE, Justice.

These two cases come before us on appeal.

The plaintiff, Mrs. Cushman, sustained personal injuries on January 28, 1966 when her husband's automobile was involved in two separate collisions within a few minutes time. A Superior Court jury returned a verdict for both plaintiffs and the defendant's appeal raises several issues as to instructions to the jury and rulings of the Court on admissibility of evidence of which one of the former is determinative of our problem. The jury could properly have found that Mrs. Cushman was driving her automobile on a trip from Portland to Calais. With her was a lady friend and six children. As the party approached Bangor

on Interstate 95 a severe blizzard developed and when the car reached Bangor the storm had increased in intensity until visibility was very limited. The road was snow packed and icy. Mrs. Cushman turned her car into the Hogan Road exit, leaving Interstate 95, and collided with the rear of a car which had stopped at the entrance of the Hogan Road.

The collision damaged the front of her car and left it inoperable although she was not then aware of this fact. She left her automobile standing in the highway and went to talk with the occupants of the car she had struck. In a few moments and before she had re-entered her vehicle an automobile driven by the defendant, also attempting to leave Interstate 95 in the obscurity ran into the rear of the Cushman vehicle, injuring Mrs. Cushman, she claimed, as she stood beside her car.

■ This accident occurred since September 3, 1965, the effective date of 14 M.R.S.A. Section 156, our comparative negligence law,[1] and the Presiding Justice submitted the case to the jury with appropriate instructions concerning the apportionment of the parties' negligence. In addition, over defendant's objections the Justice gave the jury what is substantially the traditional explanation of the doctrine of last clear chance. Although the issue was not raised before the Presiding Justice, counsel have presented to us their views upon the serious substantive question, novel to us, whether the common law doctrine of last clear chance became inapplicable in Maine when our comparative negligence law went into effect. Our conclusion that it did compels us to send the matter back for a new trial.

■ The rule of last clear chance is also known as the doctrine of discovered peril, the doctrine of supervening negligence and occasionally as the humanitarian doctrine. The rule may generally be said to be that the negligence of a plaintiff which has got him into a situation of peril is not a bar to his recovery from a defendant who became aware of plaintiff's predicament and could then have avoided the injury by the exercise of ordinary care but did not do so. There are several variations of the rule. 38 Am.Jur., Negligence, Sec. 217–224; 65A C.J.S. Negligence §§ 136–139.

The doctrine of last clear chance has long been considered an anomalous rule by most writers on negligence.[2] Prof. Prosser, one of its principal antagonists, writes simply that "No very satisfactory reason for the rule ever has been suggested."[3] Probably it resulted from the re-

---

1. "§ 156. Comparative Negligence.

"Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

"Where damages are recoverable by any person by virtue of this section subject to such reduction as is mentioned, the jury shall find and record the total damages which would have been recoverable if the claimant had not been at fault and the extent to which those damages are to be reduced.

"Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

"If such claimant is found by the jury to be equally at fault, the claimant shall not recover."

2. Prosser, Law of Torts, Section 65 (1964); Fleming James, Last Clear Chance: A Transitional Doctrine, 47 Yale L.J. 704 (1938); Harper and James, The Law of Torts, Vol. 2, Section 22.10; Winfield on Tort, Rule of Last Opportunity, London, p. 110 (1967); Malcolm M. MacIntyre, The Rationale of Last Clear Chance, 53 Harvard L.R., p. 1225 (1940); Charles J. Hilkey, Georgia Bar Journal, Vol. 13, p. 104 (1950); see note in 16 Harvard Law Review, p. 365 (1903).

3. Prosser, supra, p. 437.

luctance of English courts to apply the harsh contributory negligence rule established by Butterfield v. Forrester[4] to individual cases where to bar the plaintiff's recovery because of his relatively minimal negligence would produce a patently unjust result.[5] When, in Davies v. Mann,[6] the plaintiff, who had left his donkey unattended and with its forefeet fettered in the highway where it was injured by defendant's careless driving of his horses, was permitted to recover in spite of his negligence on the theory that the defendant, by the exercise of proper care, still might have avoided the collision, a modification of the contributory negligence rule was born.

This doctrine was first applied in Maine in 1878 in the case of O'Brien v. McGlinchy, 68 Me. 552, and was developed through a series of decisions to become the Maine rule as stated in Barlow v. Lowery, 143 Me. 214, 218, 59 A.2d 702, 705 (1948).

"The 'doctrine of the last clear chance,' or 'the doctrine of discovered peril,' is recognized in Maine, and may or may not be applicable in negligence cases, depending on the circumstances. It applies after the defendant has become, or should become, aware that the plaintiff is in a position of peril, and that the plaintiff cannot reasonably escape in the exercise of due care, while the defendant has the opportunity, by exercise of reasonable care, to avoid injury. The doctrine of last clear chance is applicable where the negligent acts of the two parties are not concurrent. The negligence of the plaintiff has ceased, or is too remote. The negligence of the defendant is the last negligence, and is the proximate cause. It is the *last* chance, and it must be the last *clear* chance. It cannot be invoked if the plaintiff's own act is the last negligent act, or if the plaintiff's own negligence is actively concurring."

The result of the acceptance of this doctrine is that the harshness to the plaintiff of the contributory negligence rule is exchanged for one of harshness to the defendant under last clear chance. Both are "all or nothing" rules.

The justifications for the last clear chance doctrine most frequently given are that because the plaintiff's negligence has ceased or is remote or because the defendant had the last opportunity to avoid the harm, the negligence of the defendant must be the sole proximate cause.[7] These explanations have been attacked vigorously by many critics as being in conflict with our established concepts of causation.

"Now it must be obvious at once that this explanation cannot stand the most superficial analysis if it purports to apply to plaintiff the tests of legal cause generally used today in the inquiry as to a defendant's liability. This has often been demonstrated. Certainly if a man's negligence has put himself or his property in a position of peril, that negligence is a proximate cause of the injury which follows when the perils of the position become realized. In such case the likelihood of the danger that befell was one of the very things that made his original act negligent, and probable consequences are proximate ones." James, Last Clear Chance: A Transitional Doctrine, supra, 707.

"The first explanation given, and the one which still is most often stated, is that if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a 'proximate cause' of the result. While this coincides rather well with the attempt made in an older day to fix liability upon the

4. 11 East 60 (1809).

5. Prosser, supra, p. 438; MacIntyre, supra, p. 1125; Johnson v. Morris, Admx., Ky., 282 S.W.2d 835 (1955).

6. 10 M. & W. 546 (1842).

7. Kinsey B. Fearon, Comparative Negligence, Maine Law Review, Vol. 18, No. 1, page 65 (1966).

'last human wrongdoer', it is quite out of line with modern ideas of proximate cause. In such a case the negligence of the plaintiff undoubtedly has been a cause, and a substantial and important one, of his own damage, and it cannot be said that injury through the defendant's negligence was not fully within the risk which the plaintiff has created. If the injury should be to a third person, such as a passenger in the defendant's vehicle, the plaintiff's negligence would clearly be recognized as a reasonable cause, and it is an utterly artificial distinction which applies any other rule when the plaintiff himself is injured." Prosser, supra, 437.

We question the validity of the proximate cause explanation and find logically inexplicable the inconsistency of the example in Prof. Prosser's last quoted sentence. We note that our Court experienced difficulty with this explanation in its first application of this rule in *O'Brien*. There the Court was considering whether the negligence of the parents in permitting their child to walk in the street where he was run over by defendant's wagon contributed to his injury. The Court said (supra, p. 556):

"In a certain sense, it undoubtedly did contribute to it. That is, the accident could not have happened without it. It made the accident possible. But whether in a legal sense it contributed to it would depend on all the facts and circumstances."

The Court concluded that "the fault of the parents would be the remote cause, while that of the defendant would be the proximate *or the more proximate cause.* * * *" (Emphasis added)

The theory that because the defendant had the last opportunity to avoid the harm his negligence must have been the sole proximate cause is hardly consistent with the modern concept that several acts of negligence may combine to cause proximately an accident. While the extent of such a plaintiff's negligence and the efficiency of its causation may be less than a defendant's, it would appear to us that the negligence of a plaintiff who gets himself into a situation of peril cannot reasonably be excluded as a proximate cause of an injury the very danger of which he should have anticipated.

Another explanation frequently advanced for this rule is that the negligence of the defendant, occurring after he knew or should have known of plaintiff's peril, involves a greater amount of fault. This explanation fails to support the application of such an arbitrary rule to possible fact situations involving deliberate recklessness on a plaintiff's part in getting into peril and only the exercise of poor judgment on a defendant's part in failing to avoid harm. In any event, the result of the use of the doctrine in cases where the negligence of both parties has contributed has frequently been to impose an absolute responsibility on the defendant which is as harsh as that which the contributory negligence rule placed on the plaintiff.

In our opinion the appearance and survival of the last clear chance doctrine is best explained by a frequently occurring dissatisfaction in the courts with the result of the operation of the contributory negligence rule. It is apparent that this dissatisfaction has also prevailed in some legislative bodies and recent years have seen several jurisdictions adopt statutes which seek to apportion liability between the parties on the basis of their respective degrees of fault. In some of these jurisdictions it has been recognized that when the triers of the fact are evaluating the degree of a plaintiff's negligence, its continuation or cessation, its nearness or remoteness and its efficiency in causation with that of the defendant, any necessity for the use of the absolute rule of last clear chance has disappeared. We believe any justification for it has also disappeared with the adoption of a doctrine which seeks to measure both parties' negligence by the same impartial standard.

In England, the birth place of the last clear chance rule, Parliament enacted the Law Reform Act of 1945 which abolished the contributory negligence rule and provided for apportionment of damages on the basis of comparative responsibility. Lord Denning's opinion in Davies v. Swan Motor Co. (Swansea) Ld. (1949) 2 K.B. 291 declared that the Law Reform Act made the last clear chance rule obsolete and no longer applicable in England. The other two Lords participating in the decision felt that the validity of the rule had already been eroded by previous judicial decisions. It appears to have disappeared from English law.

> "Today the rule seems on the whole to have been mercifully forgotten. Its existence seems to be implicitly denied by Lord Pearce in the Miraflores and the Abadesa (1967) 2 W.L.R. 806, 815–816 and though it might have been in point in some recent cases, it has not been mentioned. See, e. g. Uddin v. Associated Portland Cement Manufacturers Ltd. (1940) 2 Q.B. 582; Wright v. Imperial Chemical Industries Ltd. (1965) 109 S.J. 232."

Winfield, supra, p. 110

See also Harvey v. Road Haulage Executive, 1 Q.B. 120 (1952).

In Ireland the comparative negligence rule was adopted by legislative action (Civil Liberty Bill, 1960) and Part III, Chapter III eliminates the principle of last clear chance by statute.

Six of our states, including Maine, now have in some form a rule of comparative negligence of general application. In Wisconsin, last clear chance was abolished by judicial decision before their comparative negligence statute was enacted. Switzer v. Detroit Investment Co., 188 Wis. 330, 206 N.W. 407 (1925). The two doctrines appear still to exist together in Nebraska (Bezdek v. Patrick, 170 Neb. 522, 103 N.W.

2d 318 (1960); in South Dakota (Vlach v. Wyman, 78 S.D. 504, 104 N.W.2d 817 (1960); in Georgia (Southland Butane Gas Co. v. Blackwell, 211 Ga. 665, 88 S.E.2d 6 (1955)—dicta; and perhaps in Mississippi (dicta in a Federal Court decision—Illinois Central Railroad Company v. Underwood, 235 F.2d 868 (5th Cir.) (1926)). However, in Nebraska and South Dakota the operation of their comparative negligence statutes is limited to cases where plaintiff's negligence was "slight" and defendant's was "gross by comparison" [8] thus reducing somewhat the inconsistency of the two separate doctrines. In the cited federal case the opinion said of the status of Mississippi law: "The doctrine of discovered peril or Last Clear Chance, so important in states where contributory negligence is a complete defense, loses most of its meaning and importance in Mississippi. This explains why most of the cases applying the doctrine are old cases."

In Florida, which has a comparative negligence statute applying to railroad tort claims, the court has declared that the application of the doctrine of last clear chance in cases where the comparative negligence doctrine exists is without reason or justification and has abolished the last clear chance rule in such cases. Loftin v. Nolin, Fla., 86 So.2d 161, 59 A.L.R.2d 1257 (1956).

We conclude that the last clear chance rule is but a modification of the doctrine of contributory negligence. In our view when our contributory negligence rule as an absolute bar disappeared (in cases where the plaintiff's negligence is less than defendant's) through legislative action, the last clear chance rule disappeared with it and no longer exists as an absolute rule. Its component parts—such as the degree of plaintiff's negligence, its remoteness in time, the efficiency of its causation, the degree of defendant's negligence, the efficiency of its causation, defendant's awareness of plaintiff's peril, defendant's op-

8. Nebraska Revised Statutes, Sec. 25–1151 (1943) and South Dakota Code, Section 47.0304–1 (Supp.1960).

portunity to avoid doing damage and his failure to do so—remain as factors to be considered by the jury in measuring and comparing the parties' relative fault.

We find no error on the part of the Presiding Justice in admitting and excluding several questions asked by counsel which are included in several of plaintiff's Points on Appeal. While the questions excluded dealt with relevant matters, the form in which they were asked made them objectionable. None however present issues of law of sufficient general interest to justify detailed discussion here.

At the close of the Justice's charge to the jury, counsel for the defendant duly objected to the Justice's instructions that the jurors might, if they found defendant liable, add to plaintiff's award a sum representing damages for future suffering. Mrs. Cushman's complaint alleges merely that:

"As a result, Plaintiff, Donna Cushman, was thrown down to the ground, dragged over the pavement, her arm severely wrenched out of its socket; she was otherwise prevented from transacting her business and suffered great pain of body and mind."

The parties filed before trial a stipulation in lieu of a pre-trial order which does not state the existence of a claim for future damages. It will be noted that the allegation as to injury is in the past tense. Nothing in the pleadings suggested to the defendant that Mrs. Cushman's discomfort or disability had continued beyond the date of the complaint, some nine months before, or even up to it. No attempt was made to amend the complaint. Our rules of Civil Procedure are intended to simplify pleading but they do not eliminate the necessity of averring the essential facts of a plaintiff's cause of action. Estabrook v. Webber Motor Co., 137 Me. 20, 15 A.2d 25, 129 A.L.R. 1268 (1940).

"The philosophy of the rules is that the pleadings are not an end to themselves but only a means bringing into focus the area of actual controversy." Field and McKusick, Maine Civil Practice, Section 15.1.

The language of a complaint which fails to give a defendant notice of a claim for future damages may so affect a defendant's preparation for trial as to leave him unprepared to meet what may well be a very significant element of damage. 15 M.R. C.P.P. Section (b) provides that:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

The only reference in the testimony to this aspect of the case was the testimony of Dr. Kunkle who had examined Mrs. Cushman some eighteen months before trial and who said, on being asked whether he had a prognosis at the time he saw her:

"A I thought at the time I saw her that continued improvement would probably occur but that she could have some degree of pain and numbness or tingling, or both, for an indefinite period in the future. I couldn't estimate how long this might last."

No objection was made to this part of the doctor's testimony. In fact, however, it was not objectionable as it related in part to Mrs. Cushman's condition up to the time her action was brought. It supported Mrs. Cushman's testimony as to her discomfort subsequent to his examination of her and up to the time her action was commenced. The failure of defendant to object can not be considered an implied consent to the introduction of this issue into the case. Defendant was not called upon to anticipate an instruction that the jury might consider the element of future damages. We conclude that the element of future damages, not having been contained in the pleadings or admitted by implied consent was not properly an issue

for the jury's consideration. 25 C.J.S. Damages § 135.

In the second count of the complaint Mr. Cushman sought to recover as damages his expenditures for Mrs. Cushman's medical care and hospitalization.

Appeal sustained.

DUFRESNE, J., did not sit.